UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LOPAREX, LLC | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No.: ) ) |
| MPI RELEASE, LLC, GERALD KERBER and STEPHAN ODDERS, | ) 1:09-cv-1411 DFH -JMS ) ) |
| Defendants. | ) ) |

### COMPLAINT
### FOR INJUNCTIVE RELIEF AND DAMAGES

#### I. Nature of the Complaint

1. Plaintiff, Loparex, LLC, by counsel, brings this action against Defendants, MPI Release, LLC ("MPI"), Gerald Kerber ("Kerber") and Stephan Odders ("Odders") (collectively referred to as "Defendants"), seeking injunctive relief and damages, violations of the Uniform Trade Secrets Act, I.C. § 24-2-3-1 *et seq.*, theft/conversion, violations of I.C. §35-43 *et seq.* and tortious interference with business relationships.

#### II. The Parties

2. Plaintiff, Loparex, LLC ("Loparex"), is a manufacturer and seller of masking papers, release liners and other specialty papers and films. It has spent millions of dollars and a significant amount of time developing its products and manufacturing technology. Loparex is a Delaware Limited Liability Company with its principal place of business currently in Willowbrook, Illinois.

856213.1

3. Defendant, MPI, is a privately owned company which is a direct competitor to Loparex. It designs and manufacturers custom release liners on film and paper. It is incorporated in the state of Massachusetts and has its principal place of business in Massachusetts. MPI also has a significant manufacturing location in Greenville, IN.

4. Defendant, Kerber, worked for Loparex or its predecessor for approximately 25 years and was entrusted with highly confidential and proprietary business information. Upon information and belief Kerber currently resides in Hammond, Wisconsin. Kerber works for MPI at its Indiana location.

5. Defendant, Odders, has worked for Loparex or its predecessor for approximately 25 years and was entrusted with proprietary business and sales information including customer needs and specifications for its products. Upon information and belief Odders currently resides in Racine, Wisconsin. Odders works for MPI at its Indiana location.

### III. Jurisdiction and Venue

6. The amount in controversy in this matter exceeds $75,000.

7. This Court may properly exercise jurisdiction in this matter pursuant to 28 U.S.C. § 1332.

8. Events, transactions and harm giving rise to this dispute occurred within the geographical boundaries of the Southern District of Indiana. Accordingly, venue is proper in this Court pursuant to 28 U.S.C. §1391.

## IV.  Factual Allegations

9. Loparex is in the business of creating release liner applications in, among others, the following industries: graphic arts, labels, medical, hygiene, tapes, and industrial. Loparex has spent many years and millions of dollars developing the technology and processes that it uses for its products on behalf of its clients. On a yearly basis, Loparex spends over a million dollars on research and development.

10. Odders began employment with Loparex or its predecessor on or about June 13, 1983.

11. At the time of his separation from Loparex, Odders was Vice President, Release Liner Sales.

12. As a direct result of his employment with Loparex, Odders gained knowledge and had access to various confidential and proprietary information and trade secrets belonging to Loparex, including, but not limited to Loparex's expenditures to develop and establish a stable customer base, developing confidential pricing methods, developing marketing plans and strategies, confidential and proprietary client files, client information, software, forms, technical information, internal processes and procedures, business model, pricing, costs, and profit margins (collectively "trade secrets").

13. Kerber began employment with Loparex or its predecessor in 1985.

14. Kerber was Loparex's Plant Engineer at its Hammond, Wisconsin location. He was provided access to Loparex's most sensitive and confidential information.

15. As a direct result of his employment with Loparex, Kerber was granted access to highly confidential information from Loparex and recently acknowledged in writing that he had "acquired knowledge of the Company's Trade Secrets and Proprietary Business Information." (See Kerber's Non-Competition Confidentiality/Non-Disclosure and Intellectual Property Agreement attached hereto as Exhibit A.)

16. Examples of Kerber's knowledge of Loparex's trade secrets include:

a) knowledge of Loparex's ability to coat specific products for customers and the methods used to do so. In most cases, Loparex does not even disclose its coating process to its own customers, yet this information was made available to Kerber.

b) Kerber knows the chemical and other composition of the products that are used.

c) Kerber has specific information about Loparex's Proprietary Poly Formula for FLEXcon EX liner. He fully knows the proprietary additive used on the matte side of this liner as well as the entire process for making this liner.

d) Kerber has extensive knowledge in Radiation Silicone Cure Processes, including UV/EB chemistries and processes.

17. Kerber is one of only a handful of others in the United States market with such high level experience, knowledge and efficiency working with Polytype Coaters, which are sophisticated, "top of the line" coaters, most of which are made in Freiburg, Switzerland.

18. Kerber abruptly resigned his long time job around September 18, 2009. (See Kerber's resignation letter attached hereto as Exhibit B.)

19. Kerber admitted that he was going to work for Loparex's direct competitor, MPI at its newly purchased Greenfield, Indiana manufacturing plant.

20. MPI purchased a wide-width Thermal Coating line in Greenfield, Indiana on or around September 1, 2009. (See MPI Press Release dated September 15, 2009, "MPI Release LLC *Leapfrogs* its Competition" attached hereto as Exhibit C.) (Emphasis Added.)

21. After the purchase of this new plant, and around the same time MPI hired Kerber, MPI hired Odders on or around September 23, 2009. (See MPI Press Release dated September 23, 2009, "Silicone Coated Release Liner Industry Has New "Tier 1" Supplier, attached hereto as Exhibit D.) (Emphasis Added.)

22. The new manufacturing plant purchased by MPI contains a very expensive and specialized piece of equipment, a Swiss-made Polytype Coater.

23. These Swiss-made Polytype Coaters are considered the "Cadillac" of machines in such industry. As such these Swiss-made Polytype Coaters cost on average, several million dollars to fifteen million dollars a piece. Some even more.

24. Setting up, operating and maintaining these Polytype Coaters requires specialized skill and knowledge.

25. Loparex has four such Swiss-made Polytype Coaters at its Hammond, Wisconsin location. This is a high concentration of very expensive machinery "housed" in one plant.

26. While employed as the Plant Engineer for Loparex, Kerber was responsible for the specialized skill and knowledge required to set up, operate and maintain Loparex's Swiss-made Polytype Coaters.

27. While employed as the Plant Engineer for Loparex, Kerber had access to Loparex's trade secrets and used such trade secrets to set up, operate and maintain Loparex's Polytype Coaters.

28. Upon information and belief Polytype sent manufacturing representatives out to MPI's newly acquired Greenfield, Indiana plant in an attempt to properly set up this multi million dollar machine.

29. Upon information and belief, Polytype representatives could not set up or operate this machine.

30. Upon information and belief, Kerber was recommended by Polytype as the "go to guy" to set up, operate and maintain this machine.

31. Kerber has competitive and specialized knowledge of these machines which he gained as part of the trade secrets he acquired while Plant Engineer for Loparex. He is one of only a handful in the United States with such knowledge.

32. Through his exposure to Loparex's trade secrets, Kerber understands the pressures, roll speeds, temperatures and formulae required to make the Polytype Coaters a significant and predatory economic gain for MPI.

33. According to the Press Release in Exhibit C, "…The acquisition enables MPI to share leadership in the Industry by producing the widest and most diverse range of release-coated films… ." Furthermore, the Press Release states that, "…With this expansion, the company is well-positioned to take advantage of the full range of silicone chemistries available to the marketplace in connection with the engineering and development of controlled or differential release liners for its growing list of top tier customers."

34. Currently, Loparex is known as *the* industry provider of wide-width Thermal Coating.

35. MPI opened this plant, in part, to directly compete with Loparex for its customers.

36. One of Loparex's biggest customers for the wide-width Thermal Coating is Avery Dennison.

37. Avery Dennison is across the street from the new MPI plant in Greenfield, Indiana.

38. In employing Kerber and Odders with their specialized trade secret knowledge, MPI has engaged in predatory competition.

39. Odders and Kerber's disclosure of Loparex's trade secrets for the benefit of MPI is inevitable based upon the similarity of MPI and Loparex's plants, customers and business.

40. Loparex took reasonable steps to protect the secrecy of the trade secrets described above.

41. The Loparex trade secrets described above were not readily ascertainable to those outside Loparex.

42. The Loparex trade secrets described above derive independent economic value from not being generally known to and ascertainable by persons outside Loparex.

43. While employed by Loparex and since their employment with Loparex ended, Odders, Kerber and MPI have engaged in activities and

participated in communications designed to cause Loparex to lose clients and accounts.

44. By employing Odders and Kerber, MPI has engaged in predatory business behavior and communication designed to cause Loparex to lose clients and accounts.

45. Upon information and belief, Odders, Kerber and MPI are using and continue to use the confidential and proprietary information and trade secrets misappropriated from Loparex to benefit others not associated with Loparex.

46. Upon information and belief, Odders and MPI used and continue to use Loparex's confidential and proprietary information and trade secrets to prepare bids which compete with Loparex.

47. At all times relevant to this Complaint, Loparex had a valuable and ongoing business relationship with its clients.

48. Odders and MPI improperly interfered with Loparex's business relationship with certain clients of Loparex and/or prospective clients of Loparex, without justification, by attempting to lure those clients away from Loparex and submitting bids to those clients which competed with Loparex's bids and by using confidential and proprietary information and trade secrets which belonged to Loparex to further these improper actions.

49. Using Loparex's confidential and proprietary information and trade secrets Odders, Kerber and MPI have attempted and continue to attempt to steal business and clients from Loparex.

50. Loparex has suffered and continues to suffer irreparable harm, economic harm and harm to its reputation as a direct result of Defendants' unlawful actions.

## V. Legal Allegations

### Count 1: Breach of Uniform Trade Secrets Act, I.C. § 24-2-3-1 *et seq.*

51. Loparex hereby incorporates by reference Paragraphs one (1) through fifty (50) of this Complaint, as if the same were set forth at length herein.

52. As a direct result of his employment with Loparex, Odders gained knowledge and had access to Loparex's confidential and proprietary information, including, but no limited to client files, client information, software, forms, technical information, internal processes and procedures, business model, pricing, costs, and profit margins (collectively "trade secrets"), all of which is protected by the Indiana Uniform Trade Secrets Act, I.C. § 24-2-3-1, because it derives independent economic value from not being generally known to or readily ascertainable by others who can obtain economic value from its disclosure and because Loparex took reasonable steps to maintain the secrecy of this information.

53. As a direct result of his employment with Loparex, Kerber gained knowledge and had access to Loparex's confidential and proprietary information, including, but not limited to formulae, coating process, client information, software, forms, technical information, internal processes and procedures, business model, pricing, costs, and profit margins (collectively "trade secrets"), all of which is protected by the Indiana Uniform Trade Secrets Act, I.C. § 24-2-3-1, because it derives independent economic value from not being generally known to

or readily ascertainable by others who can obtain economic value from its disclosure and because Loparex took reasonable steps to maintain the secrecy of this information.

54.   MPI is using Loparex's trade secret knowledge through its hiring of Odders and Kerber in violation of the Indiana Uniform Trade Secrets Act.

55.   Odders, Kerber and MPI misappropriated Loparex's trade secrets by using those trade secrets to further their own personal interests and/or the interests or others outside Loparex.

56.   Odders, Kerber and MPI misappropriated Loparex's trade secrets by preparing and submitting bids to Loparex's clients and/or potential clients which directly competed with bids Loparex had submitted or intended to submit.

57.   Odders, Kerber and MPI misappropriated Loparex's trade secrets by using those trade secrets to attempt to lure Loparex's clients and/or potential clients away from Loparex.

58.   Defendants' acts violate the Indiana Uniform Trade Secrets Act, I.C. § 24-2-3-1 *et seq.*

59.   In violating the Indiana Uniform Trade Secrets Act, I.C. § 24-2-3-1 *et seq.*, Defendants' acted intentionally, maliciously and with the intent to harm Loparex.

60.   Loparex has suffered and continues to suffer irreparable harm, monetary damages and damage to its reputation as a result of Defendants' unlawful conduct.

## Count 2:  Theft/Conversion

61. Loparex hereby incorporates by reference Paragraphs one (1) through sixty (60) of this Complaint, as if the same were set forth at length herein.

62. As a direct result of Odders and Kerber's employment with Loparex, they gained knowledge and had access to Loparex's confidential and proprietary information.

63. Odders and MPI exercised unauthorized control over Loparex's confidential and proprietary information and trade secrets by using that information and continuing to use that information to prepare and submit bids which competed with Loparex and by attempting to lure Loparex's clients and/or prospective clients away from Loparex.  In so doing, Odders and MPI converted property owned by Loparex for their own use.

64. Kerber and MPI exercised unauthorized control over Loparex's confidential and proprietary information and trade secrets by using that information and continuing to use that information to set up, run and maintain a multi million dollar highly specialized machine which will compete directly with Loparex for its customers, including one of Loparex's most valuable customers which sits right across the street from MPI's Greenfield, IN location.  Kerber and MPI are attempting to lure Loparex's clients and/or prospective clients away from Loparex.  In so doing, Kerber and MPI converted property owned by Loparex for their own use.

65. In converting Loparex's confidential and proprietary information and trade secrets Odders, Kerber and MPI acted intentionally, maliciously and with the intent to harm Loparex.

66. Loparex has suffered and continues to suffer irreparable harm, monetary damages and damage to its reputation as a result of Defendants' unlawful conduct.

### Count 3: Violations of I.C. § 35-43 *et seq.*

67. Loparex hereby incorporates by reference Paragraphs one (1) through sixty-six (66) of this Complaint, as if the same were set forth at length herein.

68. Odders and MPI exercised unauthorized control over Loparex's confidential and proprietary information and trade secrets by using that information and continuing to use that information to prepare and submit bids which competed with Loparex and by attempting to lure Loparex's clients and/or prospective clients away from Loparex.

69. Kerber and MPI exercised unauthorized control over Loparex's confidential and proprietary information and trade secrets by using that information and continuing to use that information to set up, run and maintain a multi million dollar highly specialized machine which will compete directly with Loparex for its customers, including as one of Loparex's most valuable customers which sits right across the street from MPI's Greenfield, IN location. Kerber and MPI are attempting to lure Loparex's clients and/or prospective clients away from Loparex.

70. Defendants' acts and/or omissions constitute criminal acts in violation of Indiana Code §35-43 *et seq.*, which have caused Loparex pecuniary loss. The criminal acts in which Defendants' engaged include:

   a. Criminal mischief, by knowingly or intentionally causing another to suffer pecuniary loss by deception or by an expression of intention to impair the rights of another person, in violation of Indiana Code §35-43-1-2(a)(2) (2004);

   b. Theft, by knowingly or intentionally exerting unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, in violation of Indiana Code §35-43-4-2(a) (2004); and/or

   c. Criminal conversion, by knowingly or intentionally exerting unauthorized control over the property of another person, in violation of Indiana Code §35-43-4-3 (2004).

71. As a direct and proximate result of Defendants' commission of the criminal acts described above, Loparex has suffered and continues to suffer irreparable harm, monetary damages and damage to its reputation.

72. Pursuant to the Indiana Crime Victim Relief Act, Indiana Code §34-24-3-1, Loparex is entitled to recover three times the actual damages suffered as a result of Defendants' acts or omissions which constitute criminal acts in violation of Indiana Code §35-43 *et seq.*.

73. Pursuant to the Indiana Crime Victim Relief Act, Indiana Code §34-24-3-1, Loparex is entitled to recover its attorneys' fees as well as the costs of this action.

### Count 4: Tortious Interference with Business Relationship

74. Loparex hereby incorporates by reference Paragraphs one (1) through seventy-three (73) of this Complaint, as if the same were set forth at length herein.

75. During the period of Odders and Kerber's employment with Loparex, Loparex had a valuable and ongoing business relationship with clients and/or prospective clients.

76. Odders, Kerber and MPI were fully aware of the existence and nature of Loparex's business relationship with its clients and/or prospective clients.

77. Odders, Kerber and MPI improperly interfered with Loparex's business relationship with certain clients and/or prospective clients, without justification, by attempting to lure those clients and/or prospective clients away from Loparex; by submitting bids to those clients and/or prospective clients which competed with Loparex's bids; and by using confidential and proprietary information and trade secrets which belonged to Loparex to further these improper actions.

78. Using Loparex's confidential and proprietary information and trade secrets Defendants have attempted to take business and clients and/or prospective clients from Loparex.

79. Defendants' interference with Loparex's business relationships was deliberate, willful, and malicious and was intended to harm Loparex.

80. Loparex has suffered and continues to suffer irreparable harm, economic harm and harm to its reputation as a direct result of Defendants' unlawful actions.

## VI. Requested Relief

**WHEREFORE**, Plaintiff, Loparex, LLC, by counsel, respectfully requests that the Court enter judgment in its favor and against Defendants, as follows:

a. enter a permanent injunction prohibiting Defendants and any agents from using Plaintiff's confidential and/or proprietary information and/or trade secrets;

b. enter a permanent injunction prohibiting Defendants and any agents from interfering with Plaintiff's business relationship with its clients and/or prospective clients;

c. enter a permanent injunction enjoining MPI from employing Kerber;

d. enter a permanent injunction enjoining MPI from employing Odders;

e. enter a permanent injunction enjoining Defendant Kerber from working for MPI or any other Plaintiff competitor;

f. enter a permanent injunction enjoining Defendant Odders from working for MPI or any other Plaintiff competitor;

g. order Defendants to compensate Plaintiff for all damages incurred by Plaintiff as a result of Defendants' misconduct as described herein;

h. order Defendants to pay to Plaintiff three times Plaintiff's actual damages pursuant to the Indiana Crime Victim Relief Act, Indiana Code §34-24-3-1;

i. order Defendants to pay for punitive damages to Plaintiff;

j. order Defendants to pay Plaintiff's reasonable attorneys' fees pursuant to the Indiana Crime Victim Relief Act, Indiana Code §34-24-3-1, the Uniform Trade Secrets Act, I.C. § 24-2-3-1 *et seq.*, and all other applicable law;

k. order Defendants to pay all and costs incurred in litigating this action; and

    l.    order any and all other relief deemed just and proper under the circumstances.

Dated November 12, 2009

Respectfully submitted,

*Charles W. Pautsch*

*Jeffrey B. Halbert*

*Counsel for Plaintiff,
Loparex, LLC*

Charles W. Pautsch
Attorney No.:
CONSTANGY, BROOKS & SMITH LLP
330 East Kilbourn Avenue
Suite 827
Milwaukee, WI  53202
Telephone:	(414) 875-3022
Facsimile:	(414) 224-7579
E-mail:	cpautsch@constangy.com


Jeffrey B. Halbert
Attorney No.: 22727-49
STEWART & IRWIN, P.C.
251 E. Ohio Street
Suite 1100
Indianapolis, IN 46204
Telephone:	(317) 639-5454
Facsimile:	(317) 632-1319
E-mail:	jhalbert@silegal.com