**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| LOPAREX, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:09-cv-1411-SEB-JMS |
| | ) | |
| MPI RELEASE TECHNOLOGIES, LLC, | ) | **REDACTED PUBLIC VERSION** |
| GERALD KERBER, and STEPHAN | ) | |
| ODDERS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THE MPI DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF THEIR MOTION FOR DISCOVERY SANCTIONS**

**I.      INTRODUCTION**

MPI Release Technologies, LLC ("MPI"), Gerald Kerber, and Stephan Odders (collectively, "the MPI Defendants"), respectfully submit this Brief in support of their Motion for Discovery Sanctions against the plaintiff, Loparex, LLC ("Loparex") and its lead counsel.[1]

The MPI Defendants are seeking redress for repeated instances of vexatious litigation conduct and for misrepresentations made by Loparex to this Court and the MPI Defendants in an effort to use expedited procedures to harass and oppress the MPI Defendants into submission and to deprive the MPI Defendants of relevant evidence.

Specifically, Loparex filed an "emergency" motion for temporary restraining order and preliminary injunction and a motion for expedited discovery. As a result, the parties embarked on what Loparex has admitted was "substantial discovery," but which in reality was largely a sham because of Loparex's ill-conceived plan to produce and designate as trade secrets irrelevant

documents at the same time it was withholding the documents on which it actually planned to rely at the preliminary injunction hearing. The discovery misconduct related to this scheme included:

1. Mis-designating its own documents as "trade secrets" in interrogatories, causing the MPI Defendants to review and depose Loparex about thousands of pages of irrelevant documents;

2. Withholding production of its allegedly secret formulas until mere days before the hearing and producing only heavily redacted versions to the MPI Defendants while planning to submit unredacted versions to the Court at the hearing; and,

3. Giving non-responsive, overly general interrogatory answers when asked for specific descriptions of any alleged trade secrets, despite having been told previously by another federal judge that its descriptions were too general.

In addition, despite having been ordered to review the Seventh Circuit's Standard for Professional Conduct, Loparex engaged in other discovery-related misconduct, including:

4. Unilaterally terminating its deposition and those of its witnesses;

5. Abusing the MPI Defendants' witnesses by dragging out their depositions with questions entirely irrelevant to this case and at best relevant only to another case pending before another court;

6. Withholding highly relevant documents and misrepresenting the completeness of its production to the MPI Defendants, forcing the MPI Defendants to pursue third-party discovery in Minnesota;

7. Misrepresenting the volume and completeness of its document production; and,

8. Failing to provide a privilege log, despite several assurances that it would do so.

The misconduct by Loparex and its counsel is sanctionable at least under Fed. Civ. P. 26(g)(3) and 37, 28 U.S.C. § 1927, and the Court's inherent power. The MPI Defendants respectfully request the Court to sanction Loparex by dismissing Loparex's claims with prejudice, which is the only remedy that will relieve the MPI Defendants of the burden of

---

[1] The MPI Defendants do not seek sanctions against Loparex's local counsel, Mr. Halbert and Stewart & Irwin, as they have not been responsible for the conduct complained of and, to the contrary, have made a positive contribution

Loparex's oppressive conduct in the future, and ordering Loparex to reimburse the MPI Defendants' reasonable attorneys' fees to remedy harm from the past.

In addition, the Court should hold that, because it failed to produce a privilege log, Loparex has waived the attorney/client privilege and work product immunity for all documents responsive to the MPI Defendants' Second Request for Production of Documents, served December 9, 2009, and order Loparex to produce all such documents. These documents will remain relevant to the Counterclaims filed by Messrs. Kerber and Odders.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Loparex's deposition misconduct

Loparex unilaterally cancelled the first scheduled depositions in this case on less than 24 hours notice and after two of the MPI Defendants' witnesses had travelled considerable distances (from Massachusetts (Mr. Alois) and Wisconsin (Mr. Odders)) to participate. The MPI Defendants previously sought sanctions for this misconduct, which Magistrate Judge Magnus-Stinson denied because she found both parties at fault for not having had a formal scheduling meeting. *See* Docket No. 44. The Magistrate Judge ordered the parties to submit a Joint Discovery Report setting forth a schedule and further ordered both parties to review the Standards for Professional Conduct Within the Seventh Federal Judicial Circuit. *Id.* at 2.

The parties then filed the Joint Discovery Report scheduling the depositions of Mr. Kerber on December 17, 2009, beginning at 9:00 a.m. and of Mr. Odders on the same day beginning at 1:30 p.m. Notwithstanding the one-half day allotted in the agreed plan, Mr.

---

to civility and orderly procedure in this case.

Kerber's deposition lasted until sometime after 5 p.m.[2] because Loparex's counsel asked questions on entirely irrelevant topics, such as Mr. Kerber's relationship with Chris and Jon Hanson,[3] fishing trips, restoring a vintage truck, and Hawaiian vacations.[4] Mr. Kerber's counsel objected several times to the waste of time on irrelevant questions (Ex. A (Kerber Dep.) at 56, and 106-07), but Loparex's counsel stated the relevance would be made clear in a forthcoming pleading. Ex. A at 107. Loparex has never filed such a pleading.

Loparex's tactics did not improve when its witnesses were being deposed. One of Loparex's 30(b)(6) witnesses was its head of research and development, Dr. Podsiadly. Loparex unilaterally terminated Dr. Podsiadly's examination on January 6 after fewer than four hours, stating:

> MR. PAUTSCH: And at this point I really believe you have pressed the envelope past oppression, and I'm discontinuing this deposition.
>
> Q (by Knebel):  Let's go to the next one.
>
> MR. PAUTSCH:  I'm discontinuing this deposition, and the witness is leaving.

Ex. B (Podsiadly Dep.) at 116. At this point in the deposition, MPI was simply asking Dr. Podsiadly about the "voluminous" documents Loparex's interrogatory answers had designated as trade secrets.[5] Although Loparex brought Dr. Podsiadly back to complete his deposition on January 7, the result was the MPI Defendants' inability to complete the deposition of another 30(b)(6) witness, Mr. Miksta, scheduled for that day.

---

[2] As a result, for the second time Mr. Odders' deposition had to be rescheduled after he had driven from Wisconsin to Indianapolis to be deposed.

[3] Chris Hanson is the former owner of Douglas-Hanson, which Loparex had acquired. Jon Hanson is Chris's son and a former Douglas-Hanson and Loparex employee with whom Loparex is engaged in litigation in the District of Minnesota, *Hanson v. Loparex, Inc.,* Case No. 09-cv-1070-MJD-SRN (D. Minn.) (the "Hanson case").

[4] Exhibit A to this Brief is the entire transcript of Mr. Kerber's deposition so the Court can see for itself the extent to which Loparex asked irrelevant questions even under the broad standards applicable in discovery.

[5] *See* Section B.2 at pages 9-13 *infra.*

Loparex also unilaterally terminated Mr. Miksta's deposition.[6] Again, the MPI Defendants were questioning Mr. Miksta about documents Loparex had designated as alleged trade secrets. The MPI Defendants represented that, after having spent only about three-and-a-half (3.5) of the seven (7) hours of deposition time allowable under the Rules, they could finish Mr. Miksta's deposition in about one (1) more hour. Nonetheless, Loparex refused to allow the deposition to continue. Ex. C (Miksta Dep.) at 142-43.

B.   Loparex's document production misconduct

1.   Withholding of relevant and responsive documents

a)   Documents about Messrs. Kerber and Odders after their termination

In December, 2009, the MPI Defendants requested that Loparex produce "all Documents and Communications relating to or referring to Mr. Odders since his departure from Loparex," and made a similar request for documents related to Mr. Kerber. Ex. D at Request Nos. 1 and 2. Loparex agreed to produce responsive documents. *Id.* However, Loparex produced only a small handful of responsive documents, and the earliest responsive document was dated October 22, 2009, despite the fact that Mr. Odders had been fired more than a year earlier on September 11, 2008. *Id.*; Ex. E at 2 ¶ 3. Because Loparex's counsel had sent Mr. Odders a letter on March 13, 2009, accusing Mr. Odders of violating his non-compete, the MPI Defendants informed Loparex of their surprise over the miniscule production and asked Loparex to confirm that its production was complete or to supplement its production. Ex. E at 2 ¶ 3. Loparex's counsel, however, replied that it had produced *all* responsive documents. *Id.* at 1 ¶ 3. Meanwhile, the MPI

---

[6] James Miksta is Loparex's Senior Vice President of R&D and was formerly its Senior Vice President of Sales, Marketing, and R&D. Mr. Miksta was also designated by Loparex pursuant to Fed. R. Civ. P. 30(b)(6) to provide testimony as a corporate representative on behalf of Loparex. Excerpts from the transcript of his deposition are attached as Ex. C.

Defendants knew that *at least* the March 13, 2009 letter should have been part of this production but was not. *See* Ex. T (Docket No. 3, Ex. 16 (Minnesota case)).

Because the MPI Defendants knew that Loparex's production was at least partially incomplete, and suspected that it was even more so, they served a subpoena on Briggs & Morgan, PA ("Briggs" and the "Briggs' Subpoena," respectively) seeking a disk of documents Loparex had produced to Briggs in the Hanson case in Minnesota. Ex. F (Declaration of Michael Streater) at Ex. B (the Subpoena).[7] Loparex opposed any production by Briggs, threatening to seek contempt sanctions against Briggs for violating the Protective Order in the Hanson case, even though the MPI Defendants had agreed to abide by it. Thus, the MPI Defendants were forced to open a new matter before the Minnesota Court (Misc. No. 10-2; the "Minnesota case") and file a Motion to Enforce Subpoena. Loparex filed a 22 page response supported by two declarations of counsel, claiming that approximately 8,000 of the 11,500 pages of documents on the Briggs' disk had already been produced to the MPI Defendants, including all documents that referred to one or more of the MPI Defendants.

The Minnesota Court held a hearing and ordered Loparex to produce any documents on the Briggs' disk referring to the MPI Defendants, subject to the Protective Order in the Hanson case. At the time of the hearing, Loparex had produced a total of 4,376 pages of documents, not the 8,000 page figure represented to the Minnesota Court. Further, the MPI Defendants have reviewed the documents produced and found many that had not previously been produced. Ex. S (Staser Decl.) ¶ 13(f).  Computer and manual searches show that 363 documents, comprising 995

---

[7] Michael Streater is a shareholder at Briggs. His declaration ("Streater Decl.") was provided with the MPI Defendants' Motion to Enforce Subpoena in the District of Minnesota.

pages, on the disk relating to the MPI Defendants had not been produced previously, including documents related to Mr. Odders that were dated after he was fired by Loparex. *Id.*[8]

Some of the previously unproduced documents are highly relevant to this case. Michael Apperson is the CEO of Loparex. On September 18, 2008 (one week after Loparex fired Mr. Odders), Mr. Apperson sent an email to Jack Taylor (former CEO and current COO) stating that he did not intend to allow Mr. Odders and Jon Hanson to "get into the business of competing with us." This document alone supports the Counterclaim by Mr. Odders against Loparex for "blacklisting" under Indiana law. Indiana Code § 22-5-3-2; *Bridgestone/Firestone, Inc. v. Lockhart*, 5 F. Supp. 2d 667 (S.D. Ind. 1998). The Court has granted Mr. Odders' request for leave to file this Counterclaim. Docket Nos. 101 & 104. The withheld documents also include several that demonstrate how quickly prices can change in this industry, supporting the MPI Defendants' argument that any price information Mr. Odders may have possessed was worthless by the time he began employment with MPI about one year after he had last seen any Loparex financial information. *E.g.*, Dkt. 106 at 12 (citing Miksta deposition) (describing release liner pricing as "volatile").

More recently, Loparex dug an even deeper hole for itself with respect to these withheld documents. In its opposition to Mr. Odders' request to file a Counterclaim, Loparex tried to explain away this withholding and its misrepresentations as follows:

> As an additional aside, defendants' insinuation that Loparex's counsel deliberately misrepresented the number of documents produced to them to the Minnesota Federal District Court should not stand un-rebutted. The statement that 8,000 documents were produced arose out of the fact that during the week of

---

[8] Loparex has claimed in Minnesota that, because the Briggs' disk allegedly contains the email files of four people, the 363 documents include many duplicates. Loparex did not identify a single example of such duplicates. Further, even if this is true, a party is supposed to produce duplicate copies of responsive documents and there would be at least 90 missing documents. Given that Loparex's total production to date is only about 8,000 pages, this is a significant omission.

> January 22, 2010 Loparex was in the process of producing an additional 3,000 or so documents, so when counsel asked of undersigned counsel's assistant, "how many are we up to?" she responded, "approximately 8,000." This inadvertent error does not change the fact that nearly all and thousands of "Odders related" emails were produced.

Docket No. 89 at 3 n.1. This explanation is incredible for several reasons. First, the representation was that 8,000 pages out of the 11,500 on the Briggs' disk had *already* been produced. Thus, this explanation would only make sense if the 3,000 pages being produced during the week of January 22 were on the Briggs' disk. Loparex's counsel has already admitted that they were not. Ex. J. Second, Loparex's counsel made the representation in a declaration dated January 15, 2010. Ex. G ¶ 10 (Mr. Pautsch representing that all documents "were already submitted"); Ex. H ¶ 4 (Ms. Zamzow representing that based on conversations with Mr. Pautsch over 8,000 pages "were also produced to MPI"). Thus, the representation could not have been based on documents that were "in the process" of being produced "during the week of January 22." Third, at the status conference before this Court on January 22, 2010, Loparex's counsel represented that the 8,000 number was based on his recollection, which is inconsistent with the claim in the passage quoted above that the number came from a conversation with a legal assistant. Jan. 22, 2010 Tr. at 30. Finally, the current representation that "nearly all" Odders-related emails were produced is also false given that the MPI Defendants' unrebutted analysis shows that 306 Odders-related emails were not produced until the MPI Defendants received the production from the Briggs' disk. Ex. S (Staser Decl.) ¶ 14. The MPI Defendants thus have filed for sanctions in the Minnesota Court. Minnesota case, Docket Nos. 20-22.[9]

Loparex's response to the MPI Defendants' Motion for Discovery Sanctions in Minnesota revealed that its original search for responsive documents had been inadequate. As

---

[9] The Minnesota Court held a hearing on the Motion for Sanctions on May 5 and the matter is under advisement.

noted above, the MPI Defendants' request called for Loparex to produce documents concerning Messrs. Kerber and Odders after their respective dates of termination. Loparex's response brief and declaration stated that, in response to these requests, "counsel for Loparex used the *Hanson* [Briggs'] disc to retrieve Kerber's and Odders' entire email files, and turned them over to the MPI Defendants." Ex. I (emphasis in original) (Minnesota case, Docket 42, at 3; *see also* Docket 45 at 2, ¶ 8 (same)). While the MPI Defendants have reason to believe this Loparex representation is not true, even if it is true the response to the MPI Defendants' original request was defective. Producing the email files of Messrs. Kerber and Odders in response to a request for documents relating to them *after their departure* is a *non-sequitur*. Mr. Odders' email file logically could not contain any documents about himself or Mr. Kerber after Mr. Odders left Loparex in September, 2008. While Mr. Kerber's email file conceivably could have contained documents about Mr. Odders from between the time Mr. Odders left until Mr. Kerber left approximately one year later, Mr. Kerber's email file logically could not contain any documents about himself after he left. Thus, it was impossible for Loparex's response to the MPI Defendants' request to result in complete compliance. As a result of Loparex's defective initial search (which was not revealed until recently), the MPI Defendants expended considerable resources trying to obtain complete production from the Briggs firm in Minnesota. That entire effort could have been avoided if Loparex had done a proper search in the beginning.

2.    Production of non-responsive, irrelevant documents

MPI also asked Loparex to identify and produce documents evidencing its alleged trade secrets. First, Loparex cited generally to almost the entirety of its document production at that point in time. Ex. K at Responses to Nos. 3 (designating LOP-000001-849; 3038-4178) and 4 (designating LOP-000001-3037). MPI pointed out the absurdity of the Loparex's vast over-

designation, including its identification of completely irrelevant documents. Ex. L. Accordingly, MPI requested Loparex to "identify with reasonable particularity the documents you contend support Loparex's contentions as to its alleged trade secrets in this matter." *Id*. Loparex supplemented its answer but still identified thousands of pages of documents, enough to fill seven (7) three-inch binders. Ex. M at Responses to Nos. 3 & 4 (identifying voluminous pages of "LOP" Bates-labeled documents); Dkt. 114 (Staser Decl.) ¶ 3.

Naturally, MPI relied on Loparex's identification of its alleged trade secret documents to depose Loparex's witnesses on the credibility of these alleged trade secrets. *See generally* Ex. B (Def. Exs. 10.A-C referenced throughout the deposition comprise three of the seven binders of Loparex's designated alleged trade secret documents). Indeed, MPI was entitled to depose Loparex concerning these documents, which should have been the heart of Loparex's trade secret case.

During the depositions, however, *Loparex* complained its alleged trade secret documents – which continued to include many pages relating to irrelevancies such as lacerated fingers, stubbed toes, and the like – were "voluminous" and that going through them was "oppressive." Ex. B at 78, 87. *Loparex* objected numerous times to its own witness testifying about documents that *Loparex* designated as *trade secret* documents in a *trade secret* case. *E.g.*, *id*. at 86-90, 114, 116. For example, Loparex noted on the record that "[t]his has now taken on the most odd proportions of a deposition I have ever seen." *Id*. at 78. In response to a question as to whether a document alleged by Loparex to contain trade secrets contained any information about formulas, Loparex objected:

> I'm going to state an objection to all of the inquiry regarding these documents. All throughout your entire odd inquiry into these documents, you pulled out a phrase here or a phrase there, and I'm going to actually -- I will have to -- given,

you know, your tenacity at doing this, I'm going to have to bring a protective order which will establish my objection to your whole line of questioning on this, because it is just out of line.

*Id*. at 86. Loparex then went on to characterize MPI's examination about these alleged trade secret documents as "silly," "oppressive," "strange," having "no valid purpose," as "wasting [] time," and that "[MPI is] making this whole deposition into some sort of odd joke." *Id*. at 86-90, 114, and 116. Loparex's multiple objections and disruptions of the deposition, threats to move for sanctions, and eventual walking out of the deposition were all done in response to the MPI Defendants' mere attempt to examine Loparex's witness on the very documents Loparex alleged to evidence trade secrets.

In fact, the "odd joke" was the documents that Loparex had identified as evidence of its alleged trade secrets. It was apparent that Dr. Podsiadly had very little input on which documents would be included in Loparex's designation, as he remarked as to the very first "trade secret" document, ███████████████████████████████████████████ Ex. B at 77 (emphasis added). These *mere* safety reports constituted an *entire binder* of materials designated as evidence of trade secrets by Loparex (Def. Ex. 10.A). *See* Ex. B at 77-107.  The remaining "formula and manufacturing" documents were confirmed in the Loparex deposition to be miscellaneous items and an accumulation of old "aged inventory reports" that are of no value because they reveal no information about how actually to make Loparex product and because the shelf life for the products listed had already expired prior to this lawsuit (Def. Dep. Ex. 10.B). *See* Ex. B at 107-74. Loparex confirmed that the only documents containing an actual formula ███████████████████████████████████████████████████████ ███████████ Ex. B at 213-214. In other words, Loparex did not manage to designate one single trade secret document even though the MPI Defendants were forced to review voluminous pages

11

of designated documents and examine Loparex's witnesses as to these seven binders of materials. **Tellingly, Loparex's exhibit list for the preliminary injunction hearing did not include one single document that Loparex had designated in its interrogatory answer as a trade secret document.** Compare Dkt. 62 with Ex. M at Responses to Nos. 3 & 4.

After the MPI Defendants had deposed Loparex in connection with the voluminous alleged "trade secret" documents, Loparex – less than a week before the preliminary injunction hearing – produced *thousands* of pages of redacted "Standard Operating Procedures" (SOPs) (LOP-004358-76; 004498-7565), which Loparex had never identified in its answers to interrogatories as evidence of trade secrets. Compare Ex. N with Ex. M at Responses to Nos. 3 & 4.



Ex. B at 143-45; 158

More importantly, Dr. Podsiadly confirmed that

*Id.* at 165-67.

At the same time as the SOP document dump (*i.e.*, after the depositions but just prior to the hearing), Loparex also produced about 90 pages of heavily redacted documents (LOP-007566-7655), which the MPI Defendants can only speculate might contain actual formulas. *See* Exs. N and O. Loparex planned to give unredacted versions of these documents to the Court, but not MPI, and indicated that these documents would prove its trade secret claims. Ex. N; Jan. 22, 2010 Tr. at 19-20. In other words, Loparex identified in its responses to interrogatories an *admittedly* voluminous set of irrelevant documents as containing its trade secrets for purposes of

the depositions of its witnesses, wasting the MPI Defendants' time and money in reviewing the documents, taking the depositions, and preparing for the preliminary injunction hearing. Meanwhile, Loparex apparently hoped to rely on what it considers to be the real evidence at the hearing, without ever having produced unredacted versions of its formulas to the MPI Defendants. When Loparex's "bait-and-switch" plan failed because the Court stated that it would not accept the unredacted versions of Loparex's formulas *in camera* (Jan. 22, 2010 Tr. at 20-23), Loparex was left with no evidence to support its motion for preliminary injunction and acknowledged as much in its motion to withdraw the motion for preliminary injunction. Docket No. 69, ¶ 4.

      C.     <u>Loparex's non-responsive, general interrogatory answers</u>

As the Court knows, before filing this suit, and without disclosing these facts to this Court when it sought a TRO against the MPI Defendants, Loparex unsuccessfully sought a TRO against Mr. Kerber in Illinois. Judge Lefkow of the Northern District denied Loparex's TRO request, specifically noting Loparex's burden with respect to identifying trade secrets and that "I don't think [Loparex has] identified protectable trade secrets. This is a very broad list of claimed [trade] secrets." Ex. P at 16. Nonetheless, when MPI has sought to understand Loparex's case by asking it time and time again to identify *specifically* its alleged trade secrets and how they were being misappropriated, Loparex's answers have remained vague and general. *See* Exs. K, L, & M.

This Court, too, has commented on the insufficiency of Loparex's attempts to identify trade secrets. During the Court's telephonic conference on January 22, 2010, the Court indicated that it had reviewed Loparex's responses to the trade secret interrogatories (Ex. M at Nos. 3 & 4), and cautioned:

> You say it is impossible to detail each trade secret, and then you go on to say in sort of general broad terms some things with respect to processes. Is that what you're saying, that that is the best you can do in terms of honing down the trade secrets?

1/22/2010 Tr. at 6-7. Loparex's response and the Court's reply were:

> MR. PAUTSCH: We can do better than that, and we have –

> THE COURT: Wait a minute. When are you going to do that, Mr. Pautsch? First you have to put the other side on notice so they know what to defend. You can't just spring it on them at the hearing.

> MR. PAUTSCH: Your Honor, we did identify in a *broad set of categories* what they had. It was -- we have identified those items to them. They have received all of the formulas that exist in a redacted form. They received all of the processes, the SOPs in a redacted form. They know what they all are.

*Id.* (emphasis added). Rather than defend its admittedly "broad" identification of "categories" of trade secrets set forth in its responses to interrogatories, Loparex instead directed the Court to the redacted formulas that it produced less than a week before the scheduled hearing and that it intended to submit *in camera*, but never identified in its responses to interrogatories. *See supra* at 12-13.[10] This response revealed the "bait-and-switch" plan. Loparex let the MPI Defendants waste their time reviewing and deposing witnesses about "voluminous" irrelevant documents while it planned to rely on different documents at the hearing, without ever disclosing these alleged trade secrets in its responses to interrogatories and without ever showing unredacted versions of the "real" alleged trade secret documents to the MPI Defendants or specifically describing its alleged trade secrets in its interrogatory answers.

---

[10] Despite the Court's criticism of Loparex's attempts to identify a trade secret, Loparex has done nothing to submit responsive, *i.e.*, specific, interrogatory answers, and, as discussed above, has yet to produce unredacted copies of the formulas even though it assured the Court that it would make that production. Jan. 22, 2010 Tr. at 24 ("we have no problem producing them. [W]e certainly will produce them.").

14

**D.**     Loparex's failure to produce a privilege log

The MPI Defendants served their Second Request for Production of Documents on December 9, 2009. This was the request that led to the document production disputes in Minnesota described above. When Loparex responded to these document requests on December 23, 2009, it claimed that "[a] supplemental Privilege Log is filed herewith", but Loparex did not actually provide one. Ex. D. On January 5, in response to the MPI Defendants' inquiry about the meager production in response to their Second Request, Loparex stated that a privilege log would be forthcoming. Ex. E at 1 ¶ 3 ("We have produced all documents. We do have a supplemental-amended privilege log which will be forthcoming."). Loparex then continued to claim that there are such privileged documents and told the Minnesota Court and the MPI Defendants later in January that a privilege log would be forthcoming. Ex. G ¶ 11 ("Any [ ] documents [that were not produced] that may exist are attorney client/work product privileged communication. . . . a supplemental privilege log is also in the process of being prepared and served upon Defendants' counsel."); Ex. Q at 26 of transcript (Zamzow noting that "we have a privilege[] [log] that describes exactly what [Loparex] withheld"). When the MPI Defendants raised this issue before a Rule 37.1 conference call on April 15, Loparex seemed to take the position that it had no duty to produce a privilege log until asked by the MPI Defendants. Ex. R. Despite another assurance during the Rule 37.1 call over one month ago, as of May 28, Loparex has not produced a supplemental privilege log.

## III.     ARGUMENT

### A.     Applicable Standards

#### 1.     Fed. R. Civ. P. 26(g)(3) and 37

Fed. R. Civ. P. 26(g)(1)(B)(ii) states that an attorney's signature on a discovery response is a certification that the response is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Rule 26(g)(3) provides that "[i]f a certification violates this rule without substantial justification, the court . . . *must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both" (emphasis added).

Fed. R. Civ. P. 37(d) allows sanctions, including dismissal and/or reimbursement of attorneys' fees, when a party fails to attend a properly noticed deposition or to respond to interrogatories or a request for production. As shown below, the Seventh Circuit has affirmed sanctions under this Rule when a party attends but does not complete a deposition or when its responses to interrogatories or document requests are evasive and/or non-responsive. In *In re: Thomas Consol. Indus., Inc.*, 456 F.3d 719 (7th Cir. 2006), the Seventh Circuit articulated the following standard for entering a dismissal under Rule 37:

> When ordering the sanctions of default judgment or dismissal of the case under *Rule 37(b)*, the court must find that the party against whom these sanctions are imposed displayed willfulness, bad faith or fault.

*Id*. at 724.[11] In this case, dismissal and recovery of attorneys' fees are warranted based on Loparex's "bait-and-switch" scheme and other misconduct in connection with depositions, document production, and interrogatory answers.

---

[11] There appears to be a debate within the Seventh Circuit about the burden of proof applicable to discovery misconduct. *Compare Maynard v. Nygren*, 332 F.3d 462, 468 (7th Cir. 2003) (clear and convincing), *with Wade v. Soo Line R.R. Corp.*, 500 F.3d 559, 564 (7th Cir. 2007) (based on Supreme Court cases, expressing doubt about "clear and convincing" standard adopted in *Maynard*), and, *Ty, Inc. v. Softbelly's, Inc.*, 517 F.3d 494, 498 (7th Cir.

16

In determining an appropriate sanction for discovery misconduct, courts consider a number of factors. These factors include the severity of the misconduct, the degree to which it was intentional, whether it is an isolated incident or part of a pattern, any prejudice to the adverse party, and prior warnings. *Newman v. Metropolitan Pier & Exposition Authority*, 962 F.2d 589, 591 (7th Cir. 1992). *See generally* 7 James Wm. Moore, *Moore's Federal Practice* § 37.96[4], at 37-175 (2009). The Seventh Circuit recognizes the weakness of the plaintiff's case as a factor that favors dismissal for discovery misconduct.[12] *Wade v. Soo Line R.R. Co.,* 500 F.3d 599, 564 (7th Cir. 2007); *Maynard v. Nygren*, 372 F.3d 890, 893 (7th Cir. 2004), *cert. denied*, 543 U.S. 1049 (2005). The Seventh Circuit does not "require district courts to select the 'least drastic' or 'most reasonable' sanction." *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 672 (7th Cir. 1996); *Newman*, 962 F.2d at 591. There should be some proportionality between the sanction and the misconduct. *Wade*, 500 F.3d at 564 ("The punishment should fit the crime").

2.    28 U.S.C. § 1927

28 U.S.C. § 1927 authorizes the award of sanctions against counsel for certain misconduct. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 sanctions can be imposed when a party pursues a claim that is "without a plausible legal or factual basis and lacking in justification[,]" or against an attorney that has acted in an

---

2008) (agreeing with *Wade*). As shown below, this dispute is of no real consequence in this case because under express Seventh Circuit authority the MPI Defendants' evidence meets the higher standard.

[12] The MPI Defendants have filed a Motion for Summary Judgment based on Loparex's lack of evidence and other defects in its case. Docket No. 105.

objectively unreasonable manner by engaging in a "serious and studied disregard for the orderly process of justice." *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988) (citation omitted). Additionally, such sanctions can be imposed if a lawyer pursues a path that a "reasonably careful attorney would have known, after appropriate inquiry, to be unsound[.]" *Kapco Mfg. Co., Inc. v. C & O Enter., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989). The purpose of § 1927 "is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them." *Riddle & Assocs., P.C.* v. *Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (citations omitted).

In the Seventh Circuit, liability under § 1927 does not require bad faith. *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1328 (Fed. Cir. 2000) (citing *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226-27 (7th Cir. 1984)). *A fortiori,* both subjective bad faith and objective bad faith are actionable under § 1927. *See Dal Pozzo v. Basic Mach. Co., Inc.*, 463 F.3d 609, 614 (7th Cir. 2006).

### 3. The Court's Inherent Power

"[A] federal court has the inherent power to sanction for conduct which abuses the judicial process." *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993) (citing *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991)). The court's inherent power, or inherent authority, is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)).

"[T]he Court has the ability to fashion an appropriate sanction for conduct [that] abuses the judicial process. In doing so, the Court must consider the egregiousness of the conduct in question in relation to all aspects of the judicial process." *1100 West, LLC v. Red Spot Paint &*

*Varnish Co.*, No. 1:05-cv-1670-LJM-JMS, 2009 WL 1605118, *27 (S.D. Ind. June 5, 2009) (McKinney, J.) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *Greviskes v. Univs. Research Ass'n, Inc.*, 417 F.3d 752, 758-59 (7th Cir. 2005)) (internal quotation marks and citations omitted). A district court may sanction an attorney or a law firm under its inherent authority, including by requiring the law firm to pay the other side's attorneys' fees and costs. *See id.* at *27-28, *35.

       B.    <u>Failure to produce a privilege log</u>

       Courts have noted that "the privilege log generally is due at the time of the written discovery response to avoid waiver of the privilege." *Capital Corp. Mergers & Acquisitions, Inc. v. Arias Co, Ltd.*, Case No. 6:04-cv-158-Orl-28JGG, 2006 U.S. Dist. LEXIS 26575, *8 (M.D. Fla. May 4, 2006) (citing *Universal City Dev. Partners v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 696 (M.D. Fla. 2005)). *See also Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) (30 days is default period to provide privilege log).

       In *Novelty, Inc. v. Mountain View Marketing, Inc.*, Case No. 1:07-cv-1229-SEB/JMS, 2009 U.S. Dist. LEXIS 98592 (S.D. Ind. Oct. 21, 2009) (Barker, J.), this Court wrote:

> If Novelty needed more time to prepare its privilege log (and apparently it did), it should have formally sought and received an extension of time, so that its explanation of its inability to meet the deadline could be reviewed by the Court. Unilaterally granting itself a continuance of the operative deadline is impermissible.

*Id.* at *25 (citations omitted). Later in the opinion, because Novelty's privilege log was produced four days after a Court-ordered deadline and was inadequate, the Court ordered Novelty to produce all documents responsive to a set of document requests that had previously been withheld based on the attorney-client privilege and work product immunity. *Id.* at **31-32.

C.     The Court Should Sanction Loparex and its Counsel for the "Bait-and-Switch" Scheme and Other Discovery Violations.

1.     Document production misconduct

Pursuant to its "bait-and-switch" scheme, Loparex produced "voluminous" (in its own counsel's word) irrelevant documents, and designated them as the evidence of its trade secrets, causing the MPI Defendants to incur unnecessary attorneys' fees to review and depose Loparex's witnesses about aged inventory reports, safety reports, and redacted standard operating procedures that Loparex never even included on its exhibit list for the hearing on its Motion for Preliminary Injunction. After the depositions of its witnesses had concluded (unilaterally), and less than a week before the hearing, Loparex produced the documents on which it actually intended to rely as the evidence of its trade secrets, but even at that late date produced only heavily redacted versions.

A party's failure to sort through its documents and produce only those that are responsive is sanctionable. In *Rothman v. Emory Univ.*, 123 F.3d 446 (7th Cir. 1997), in response to the district court's order to comply with Emory's discovery requests, Rothman "produced three large bankers' boxes of college papers and numerous other unrelated, non-responsive materials." *Id.* at 455. The Seventh Circuit affirmed an award of sanctions against Rothman, stating that he was not even entitled to a hearing on the sanctions because he had "blatantly (and repeatedly) rebuffed his obligation to sort through the documents and produce only those responsive to Emory's request." *Id.* Loparex is guilty of the same type of misconduct. Its initial interrogatory answer claimed that virtually every document it had produced was evidence of its alleged trade secrets. After the MPI Defendants challenged this over-designation, Loparex narrowed the designation but again included thousands of pages of irrelevant documents. In other words, Loparex repeatedly "rebuffed [its] obligation to sort through the documents and [identify] only

those responsive to [the MPI Defendants' interrogatory]." The result was that the MPI Defendants were forced to waste a lot of time reviewing and deposing Loparex's witnesses about irrelevant documents. Loparex should be sanctioned accordingly.

Further, as detailed above, Loparex and its counsel also withheld from production many documents responsive to the MPI Defendants' second request and then fought hard in another jurisdiction to prevent their production. The withheld documents include one supporting the counterclaim by Mr. Odders and others supporting his defense that any financial information to which he had access was too old to have any value by the time he joined MPI. This document production misconduct is sufficient independently to support dismissal of this case and reimbursement of the MPI Defendants' attorneys' fees.

In *Wade v. Soo Line R.R. Corp.,* 500 F.3d 559 (7th Cir. 2007), the plaintiff's medical file contained some documents damaging to his case that were not produced along with the rest of the file. The defendant's counsel discovered the improper withholding at a deposition by noticing that the original file was thicker than the copy that had been produced. When another copy was made at the deposition, the defendant's counsel again noticed that some of the originals were still missing. Even after all the responsive documents were identified, the plaintiff's counsel delayed producing them. *Id.* at 560-61. The district court dismissed the case with prejudice and awarded the defendant all of its attorneys' fees. *Id.* at 563.

The Seventh Circuit affirmed dismissal of the case and remanded to recalculate the amount of attorneys' fees. *Id.* at 566. In language perfectly applicable here, the court wrote:

> The district court could and did conclude that Brugess [plaintiff's counsel] (or someone else on the plaintiff's legal team) deliberately concealed documents known to favor the adversary; *that's sufficient evidence of bad faith.* Attorneys' actions are imputed to their clients, even when those actions cause substantial harm. A litigant bears the risk of errors made by his chosen agent. Sanctions for

21

> misconduct are within the discretion of district judges, and dismissing this case
> was not an abuse of discretion.

*Id.* at 564 (emphasis added; citations omitted). Loparex has also "deliberately concealed documents known to favor" its adversaries, namely, at least the Apperson email concerning Mr. Odders and the documents showing the volatility of pricing in this industry. Loparex took extreme measures to conceal these documents: (1) misrepresenting the volume and completeness of its production, (2) threatening Briggs & Morgan with contempt of a protective order if it produced them even though the MPI Defendants' counsel had agreed to subject themselves to the protective order, and (3) filing a 22 page brief and two Declarations of counsel, which included further misrepresentations, to oppose production. "[T]hat's sufficient evidence of bad faith" to justify dismissal and attorneys' fees. *Id. See also Maynard v. Nygren*, 332 F.3d 462, 466 (7th Cir. 2003), *appeal after remand*, 372 F.3d 890, 892 (7th Cir. 2004) (affirming dismissal for withholding a single key document until shortly before trial), *cert. denied*, 543 U.S. 1049 (2005); *Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co.*, 667 F.2d 600, 602-03 (7th Cir. 1981) (affirming dismissal where deposition showed document production not complete even after plaintiff's owners produced documents and submitted affidavits affirming production was complete).

In addition to withholding the documents favorable to the MPI Defendants, Loparex withheld the documents on which it actually intended to rely at the hearing until after the parties had finished the pre-hearing depositions. Thus, the MPI Defendants wasted substantial time, effort and money reviewing and deposing Loparex's witnesses about the irrelevant documents that Loparex originally identified as evidence of its alleged trade secrets. In other words, Loparex made a transparent attempt to prevail at the preliminary injunction hearing "by ambush," a

22

process that has been improper since the modern discovery rules were first adopted in the late 1930s. The failed "bait-and-switch" scheme likewise warrants sanctions.

2.      Deposition misconduct

In the span of a few weeks, Loparex and its counsel (1) dragged Mr. Kerber's deposition out for more than four hours longer than scheduled with all manner of irrelevant inquiries and (2) twice unilaterally terminated the depositions of its own witnesses (although one was resumed) simply because the MPI Defendants examined Loparex's witnesses about documents Loparex had designated as evidence of its trade secrets.

Loparex's deposition misconduct alone is also sufficient to support dismissal. In *Collins v. Illinois*, 554 F.3d 693 (7th Cir. 2009), the court affirmed the dismissal of a case based on the *pro se* plaintiff's "willful refusal to be deposed." *Id.* at 696. The plaintiff had appeared for her deposition but refused to be deposed in the presence of anyone other than the lawyers and also refused to wait for a lawyer to contact the Magistrate Judge in the case. *Id.* at 695. The refusal to be deposed satisfied the standard for "willfulness, bad faith, or fault" and the Seventh Circuit found that the choice of dismissal as a sanction was reasonable for the refusal coupled with a failure to answer interrogatories timely and produce documents. *Id.* at 696-97.

The Seventh Circuit has affirmed the dismissal of other cases where a party refused to be deposed. In *Philips Medical Systems Int'l, B.V. v. Bruetman*, 982 F.2d 211 (7th Cir. 1992), the court upheld a $19 million default judgment when the defendant left the jurisdiction in violation of a court order and did not return to conclude his deposition. *Id.* at 213-14. The defendant had been deposed over a three day period, but did not appear for the final day. *Id.* at 213. In *Newman v. Metropolitan Pier & Exposition Authority*, 962 F.2d 589 (7th Cir. 1992), an allegedly indigent *pro se* plaintiff refused to return to Chicago from California for a deposition and the Seventh

23

Circuit affirmed the dismissal of her case. *Id.* at 591-92. In *U.S. v. DeFrantz*, 708 F.2d 310 (7th

Cir. 1983), the court affirmed the entry of a $187,000 default judgment against the defendant

when he flew to San Francisco a couple weeks before his deposition but, relying on a letter from

a doctor, claimed returning for the deposition would place his life at risk and did not do so. *Id.* at

312.

In this case, Loparex has even less justification for its misconduct than the parties whose

cases were dismissed. Loparex is represented by experienced counsel; it is not *pro se*. Thus,

Loparex knew its conduct was improper and the potential consequences. Loparex has not alleged

poverty and none of its witnesses claimed to have health issues. Rather, Loparex's sole

complaint about depositions of its own 30(b)(6) witnesses was that being examined about

"voluminous" documents *it alone* had designated as evidence of its alleged trade secrets was

"oppressive." Loparex's counsel systematically interrupted the deposition of Dr. Podsiadly,

threatening to seek sanctions on several occasions (which it never did), and walked out of the

deposition during the MPI Defendants' questioning about Loparex's designated alleged trade

secret documents. In addition to unilaterally terminating its own deposition, Loparex abused Mr.

Kerber. Loparex claimed it would file a pleading to establish the relevance of questions that

doubled the scheduled length of Mr. Kerber's deposition, yet such a pleading has never been

filed. All this misconduct reeks of bad faith and supports dismissal, especially in light of

Magistrate Judge Magnus-Stinson's prior admonition to review the Standards for Professional

Conduct.

###### 3.      Interrogatory misconduct

As noted above, despite having been warned by Judge Lefkow that its purported trade

secret designations were too general, Loparex continues to rely on general descriptions of its

alleged trade secrets in response to the MPI Defendants' interrogatories requesting specific descriptions of the alleged trade secrets and specific evidence of any alleged misappropriation. This Court also expressed its concern over the broad nature of Loparex's responses to interrogatories. During the January 22 status conference, Loparex admitted its responses identified only broad categories of information, but Loparex has never supplemented or amended those responses.

Further, it was Loparex's interrogatory answers that designated almost the entirety of its document production as evidence of its alleged trade secrets, leading to the wasted time and deposition disputes described above. Meanwhile, Loparex never intended to use the *designated* documents to attempt to establish its trade secret claims, as evidenced by Loparex's failure to even list any of them on its exhibit list and Loparex's representation to the Court that the entirely different (and non-designated) set of late-produced, redacted documents were allegedly the pièce de résistance of its trade secret claim. Loparex's evasive or non-responsive answers also support dismissal of this case and recovery of attorneys' fees. *In re: Thomas Consol. Indus., supra,* affirmed the dismissal of a case in which the plaintiff continually repeated a boilerplate, non-responsive interrogatory answer, produced documents but never served a formal response to document requests, and misrepresented the service date for the interrogatory answers. 456 F.3d at 721-23. Although Loparex's answers may not be as egregious as those in the *Thomas Consolidated Industries* case, they are evasive and non-responsive, despite Judge Lefkow's prior ruling that Loparex's descriptions of its alleged trade secrets were too general, thus supporting the requested sanctions. *See also Fox v. Comm'r of Internal Rev.,* 718 F.2d 251, 256 (7th Cir. 1983) (affirming dismissal in light of pattern of failure to respond to discovery).

25

D.    The Appropriate Sanctions are Dismissal, Reimbursement of Attorneys' Fees, and Waiver of the Attorney/Client Privilege and Work Product Immunity.

In light of the factors considered by courts assessing discovery misconduct and the appropriate sanctions, the Court should dismiss this case with prejudice, order Loparex to reimburse the MPI Defendants for the attorneys' fees related to its misconduct,[13] and order Loparex to produce any documents withheld from production in response to the MPI Defendants' second request based on the attorney-client privilege and work product immunity.

The MPI Defendants have already cited above several Seventh Circuit cases that have upheld a dismissal with prejudice based on misconduct analogous to that committed by Loparex and its counsel to date. Some instances of the misconduct, such as the multiple misrepresentations to this Court and the Minnesota Court over compliance with the MPI Defendants' second request for production and the "bait-and-switch" scheme, have been of the most severe type. There is now an established pattern of discovery abuse that extends to every form of discovery the MPI Defendants have employed -- depositions, document production, and interrogatories. The pattern reinforces that the conduct has been intentional. The MPI Defendants have been prejudiced, among other reasons, because they have expended significant attorneys' fees and are no closer to learning Loparex's alleged trade secrets, if any, or evidence supporting its claim of misappropriation. The vast majority of this misconduct followed Magistrate Judge Magnus-Stinson's directive to review the Seventh Circuit's Standards for Professional Conduct. All of these factors support the strong sanctions of dismissal and recovery of attorneys' fees.

---

[13] Of course, the MPI Defendants will not seek to duplicate any recovery they may receive from the Minnesota Court.

E.    Loparex Has Waived the Attorney-Client Privilege and Work Product Immunity by Failing to Produce a Privilege Log.

As noted above, on at least four occasions dating back to January of this year, Loparex recognized its obligation to produce a privilege log in response to the MPI Defendants' Second Request for Production, yet it has neither done so nor sought a formal or informal extension. When the MPI Defendants did raise the issue, Loparex's response was apparently that it had no obligation to produce a log until prompted by the MPI Defendants. Even then, over six weeks later, Loparex has not produced the applicable log. In these circumstances, Loparex has waived any applicable privilege or immunity.

In the *Burlington Northern* case, *supra*, the Ninth Circuit articulated the following standard for finding a waiver in these circumstances:

> [U]sing the 30-day period as a default guideline, a district court should make a case-by-case determination, taking into account the following factors: the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.

408 F.3d at 1149; *see also Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001) ("[E]vidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports finding waiver.").

In *Novelty, supra*, this Court imposed waiver of the privilege as a sanction where the log was four days late and inadequate and the party had shown a cavalier attitude towards discovery. 2009 U.S. Dist. LEXIS 98592, at *31 (*citing Ritacca*). In *Ritacca*, the court found that the party

27

responding to discovery had waived its claims of privilege where, *inter alia*, its privilege log was not produced for several months following the defendant's initial responses to discovery requests. *Id.* at 335. The court also refused to consider the responding party's boilerplate "general objections" based on privilege. *Id.* at 335 n.4.

Here, as in *Burlington Northern, Novelty,* and *Ritacca,* the sanction of waiver should apply. Five months have passed since Loparex's responses to MPI's discovery requests were due. In that time, Loparex has repeatedly promised to provide a detailed privilege log for the numerous documents that it has withheld based on assertions of privilege, but it has failed to do so and has not provided any justification for its delay. Rather, Loparex's only purported justification is that the MPI Defendants did not remind it of an obligation it had already recognized repeatedly. Ex. R. Along with the many other discovery abuses documented in this motion, this response establishes Loparex's cavalier attitude towards compliance with the discovery rules.

Accordingly, the Court should order Loparex to produce promptly any and all documents responsive to the MPI Defendants' Second Request for Production that have been withheld based on the attorney/client privilege or work product immunity. This should include any documents that are responsive to the Second Request that were also responsive to the MPI Defendants' First Request and were withheld based on privilege or immunity. *Novelty,* 2009 U.S. Dist. LEXIS 98592, at **31-32 n.13. These documents are relevant to the Counterclaims filed by Messrs. Kerber and Odders. Indeed, in an attempt to explain the dearth of documents produced in response to the MPI Defendants' request for documents concerning Messrs. Kerber and Odders following their respective termination dates, Loparex represented to the Minnesota Court that "the minute he [Mr. Odders] was terminated, they engaged counsel. They probably engaged

counsel before he was terminated, and they knew he might go compete, so they have a privilege law [sic – log] that says [sic – includes] emails between the counsel and company regarding Odders and Kerber and MPI eventually." Ex. Q (Transcript of Minnesota hearing) at 26. Thus, Loparex's privileged documents almost certainly relate to its plan to keep Mr. Odders from working for any competitor and are relevant, at a minimum, to his blacklisting Counterclaim.


IV.     **CONCLUSION**

For these reasons, the Court should dismiss Loparex's claims with prejudice and award the MPI Defendants the reasonable attorneys' fees they have incurred as a result of the misconduct described above. The Court should afford the MPI Defendants fourteen days following its ruling on this motion to submit evidence of the relevant attorneys' fees. The Court should hold that Loparex has waived the attorney-client privilege and work product immunity for all documents responsive to the MPI Defendants' second request, order Loparex to produce all such documents, and award the MPI Defendants all other just and proper relief.


Respectfully submitted,


*s/Lynn C. Tyler*
Donald E. Knebel
Lynn C. Tyler
Aaron M. Staser
Jennifer L. Schuster
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204-3535
Ph.: 317/231-7392
Fax: 317/231-7433

Attorneys for Defendants, MPI Release
Technologies, LLC, Gerald Kerber, and
Stephan Odders

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on May 28, 2010, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following counsel of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Charles W. Pautsch
Lisa A. Baiocchi
CONSTANGY, BROOKS & SMITH LLP
330 East Kilbourn Avenue
Suite 827
Milwaukee, WI 53202
cpautsch@constangy.com
lbaiocchi@contangy.com

Jeffrey B. Halbert
STEWART & IRWIN, P.C.
251 E. Ohio Street
Suite 1100
Indianapolis, IN 46204
jhalbert@silegal.com


*s/Lynn C. Tyler*