UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

LOPAREX, LLC, )
    *Plaintiff*, )
 )
  *vs*. ) 1:09-cv-01411-JMS-TAB
 )
MPI RELEASE TECHNOLOGIES, LLC, GERALD )
KERBER, and STEPHAN ODDERS, )
    *Defendants*. )

**ORDER**

Presently before the Court is Plaintiff Loparex, LLC's motion to dismiss Defendant Stephan Odder's and Defendant Gerald Gerber's counterclaims for failure to state a claim. [Dkt. 124, 126.] Both counterclaims arise under Indiana's Anti-Blacklisting statute, Ind. Code § 22-5-3-2.

**I.**
**Standard of Review**

Complaints and counterclaims are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) if they fail to "provide a 'short and plain statement of the claim showing that the pleader is entitled to relief' that is also sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 667 (7th Cir.2008) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); Fed. R. Civ. P. 8(a)(2)). A complaint or counterclaim only shows an entitlement to relief when its non-conclusory allegations, taken as true, "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (citation omitted). The non-moving party receives "the benefit of imagination, so long as the hypotheses are consistent with the complaint [or counterclaim]." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) (quotation omitted).

# II.
# Allegations in the Counterclaims

**A. Mr. Odders' Counterclaim**

In September 2008, Loparex terminated Mr. Odders' employment. [Dkt. 103 at 11 ¶2.] A few days later, Loprarex' CEO emailed its COO that he "has no intentions of letting…Odders get in the business of competing with us." [*Id.* at 11 ¶3.] Although Mr. Odders had a non-competition agreement that limited his ability to work for a competitor, in unimportant respects here, for one year after his termination, [*id.* at 10 ¶1], the CEO's email wasn't specifically limited as to time.

In March 2009, Loparex wrote Mr. Odders, contending that he had violated the non-competition agreement, which was still in effect by, allegedly, starting to work for Defendant MPI Release Technologies, LLC. [*Id.* at 11 ¶6.] (Mr. Odders denies that he began working there before September 2009. [*Id.* at 12 ¶7.]) Loparex didn't, however, ever file a lawsuit claiming a violation of that non-competition agreement [*Id.* at 11 ¶8.] By the time Loparex filed this action in November 2009, alleging misappropriation of trade secrets, Mr. Odders' non-competition agreement had expired. [*Id.* at 11 ¶9.]

Along with its Complaint, Loparex filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction ("<u>Motion for Preliminary Injunction</u>"), seeking an order prohibiting Mr. Odders from working for MPI. [*Id.* at 12 ¶10.] The following month, December 2009, "Loparex offered to dismiss [this] lawsuit against Mr. Odders…if MPI agreed to, *inter alia*, promptly discharge Mr. Odders." [*Id.* at 12 ¶11.] In January 2010, Loparex withdrew its Motion for Preliminary Injunction, [*id.* at 12 ¶12], and renewed its previous offer "to dismiss the lawsuit if MPI agreed to fire Mr. Odders." [*Id.* at 12 ¶13.] Absent a dismissal, Loparex con-

tinues, in its prayer for relief, to seek permanently "enjoin[] Odders from working for MPI or any other…competitor." [*Id.* at 12 ¶12.]

### B. Mr. Kerber's Counterclaim

Mr. Kerber also used to work for Loparex, though he voluntarily quit in September 2009. [Dkt. 102 at 3 ¶15.]

In October 2009, Loparex sued him in Illinois state court—though the action was promptly removed to the Northern District of Illinois—claiming (among other things) that he had violated his non-competition agreement and committed trade secret misappropriation. [*See* 102-2.] Loparex asked that Mr. Kerber be "enjoin[ed]…from working for MPI." [*Id.* at 11 ¶40(A).]

In November 2009, shortly after the court questioned the validity of Kerber's non-competition agreement and denied Loparex's request for a temporary restraining order, Loparex voluntarily dismissed the action in Illinois. [Dkt. 102 at 11 ¶7.] Two days later, Loparex filed the present action, again seeking to enjoin Mr. Kerber from working for MPI, claiming trade secret misappropriation and other related theories (but no claim for breach of any non-competition agreement as to Mr. Kerber). [Dkt. 76 at 19 ¶(c).]

Through its Motion for Preliminary Injunction, Loparex also sought to prevent Mr. Kerber's continued employment at MPI. As it did with Mr. Odders, Loparex has offered to dismiss this action if MPI fires Mr. Kerber. [Dkt. 102 at 13 ¶18.]

### III.
### Discussion

The Indiana Anti-Blacklisting statute prohibits, on pain of actual and exemplary damages, companies from "black-list[ing] any discharged employees, or attempt[ing] by words or writing, or any other means whatever, to prevent such discharged employee, or any employee who

may have voluntarily left said company's service, from obtaining employment with any other person, or company." Ind. Code § 22-5-3-2.

### A. Mr. Odders' Counterclaim

Loparex raises only one challenge to Mr. Odders' Counterclaim. It argues that case law precludes liability for blacklisting by companies who merely sue to enforce their non-competition agreements. *See Lemaster v. Spartan Tool, LLC*, 2009 U.S. Dist. LEXIS 21415 *10 (S.D. Ind. 2009) ("The Blacklisting Statute does not apply when the employer is trying to enforce a non-compete agreement.") (*citing Baker v. Tremco, Inc.*, 890 N.E.2d 73, 86 (Ind. Ct. App. 2008)).

Loparex has, however, misunderstood Mr. Odder's Counterclaim. He has sued over Loparex' decision to seek an injunction against his continued employment with MPI and its offer to drop this action if MPI fired him. [Dkt. 103 ¶¶17-18.] Loparex' allegedly illegal "attempt[s]…to prevent such discharged employee…from obtaining employment with any other person, or company," Ind. Code § 22-5-3-2, post-date the expiration of the non-competition agreement.[1] Loparex' reliance on *Lemaster* is, therefore, misplaced: Loparex couldn't have been attempting to enforce the non-compete. Mr. Odders has stated a claim.

### B. Mr. Kerber's Counterclaim

As for Mr. Kerber's Counterclaim, Loparex argues that it fails for two reasons. First, it says that the Indiana Supreme Court's decision in *Wabash Railroad Co. v. Young*, 69 N.E. 1003 (Ind. 1904), remains good law and thus prohibits individuals, like Mr. Kerber, who voluntarily leave their jobs from suing for blacklisting. Second, whether or not the decision remains good

---

[1] To the extent that anything in the Counterclaim could arguably be read otherwise, Mr. Odders' response brief denies attempting to assert a claim over against "taken pursuant to the non-compete agreement." [Dkt. 137 at 4.]

law, Loparex says that because Indiana law exempts enforcement of non-competition agreements from the Anti-Blacklisting statute, Indiana law would "logically" likewise exempt attempts to protect trade secrets. [Dkt. 127 at 5.]

   **1.** *Young*

Through its 1904 decision in *Young*, the Indiana Supreme Court held unconstitutional the predecessor version of Ind. Code § 22-5-3-2 to the extent that the statute prohibited blacklisting of employees who voluntarily left their jobs. 69 N.E. at 1005. Because the title of the act—"An act for the protection of discharged employees and to prevent blacklisting"—didn't reference protections for employees who had voluntarily left their jobs and because protections for those employees weren't related to protections of discharged employees, the court held that the act violated the version of Article 4, § 19 of the Indiana Constitution that was in effect at that time. *Id.* That constitutional provision read as follows:

> Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title.

Ind. Const. Art. 4, § 19 (1851 version), *available at* http://www.in.gov/history/2867.htm.

Because this Court sits in diversity jurisdiction in this action, the Court's task is to predict how the Indiana Supreme Court "would decide the case, and decide it the same way." *Mindgames, Inc. v. W. Publ'g Co.*, 218 F.3d 652, 655 (7th Cir. 2000) (citations omitted). Given that the Indiana Supreme Court has previously held that employees who voluntarily leave their jobs can't maintain an action for blacklisting, the Court would "ordinarily take a nonoverruled decision of the highest court of the state whose law governs a controversy by virtue of the applicable choice of law rule to be conclusive on the law of the state." *Id.* (citations omitted).

Ordinarily is not, however, always. "Since state courts like federal courts do occasionally overrule their decisions, there will be occasional, though rare, instances in which the best prediction of what the state's highest court will do is that it will not follow its previous decision." *Id.* at 656. The Defendants have argued that this case presents one of those rare instances because, if called upon to overturn *Young*, the Indiana Supreme Court would do so.[2]

The Court agrees with the Defendants that *Young* doesn't accurately reflect the current state of Indiana law, for several reasons. First, Article 4, § 19 of the Indiana Constitution has been significantly amended since *Young*, making the case distinguishable. Since the 1974 Amendment, it now reads: "An act, except an act for the codification, revision or rearrangement of laws, shall be confined to one subject and matters properly connected therewith." Ind. Const. Art. 4, § 19 (1974 Amend.) Gone is the former requirement that the title of the act state its subject, upon which *Young* partially relied. Second, since that amendment was passed, the General Assembly amended the statute to expand its reach to limited liability companies, *see* 1993 Ind. Acts 8, § 289, again choosing to include the language about employees who voluntarily leave their employment. Thus, the act at issue here isn't exactly the same as the one in *Young*. Third, the rigidity of the Indiana Supreme Court's views on the amended one-subject rule has loosened considerably over the past several years, and under the current standard, Ind. Code § 22-5-3-2 would likely pass one-subject muster. *See Bridgestone/Firestone, Inc. v. Lockhart*, 5 F. Supp. 2d 667, 687 n.13 (S.D. Ind. 1997) (Hamilton, J.); *see also Lemaster v. Spartan Tool LLC*, 2009 U.S. Dist. LEXIS 21415, *7-8 (S.D. Ind. 2009) (noting that *Young* has been criticized by federal and

---

[2] No party has requested that the Court could or should certify the question to the Indiana Supreme Court. *See* Ind. App. R. 64(A) ("[A]ny federal district court may certify a question of Indiana law to the Supreme Court when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent."). Given the extra expense to the parties associated with a certification, the Court will respect their implicit preference, and simply decide the question for itself.

state courts). Finally, Loparex offers no argument at all about why considerations of stare decisis in this matter are so important as to persuade the Indiana Supreme Court to adhere to much criticized, and possibly erroneous, precedent.[3] The law has long disdained blind adherence to an old rule that has no contemporary justification. *See* Oliver W. Holmes, *The Path of the Law*, 10 Harv. L. Rev. 457, 469 (1897) ("It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.").

If presented with the question today, the Indiana Supreme Court would likely distinguish or overrule *Young*, for one or more of the reasons outlined above. The Court will, therefore, not follow *Young*. Instead, the Court will follow the plain-text of Ind. Code § 22-5-3-2, which permits blacklisting claims by even employees "who may have voluntarily left" their jobs, as Mr. Kerber alleges that he did.

### 2. Loparex' Analogy to Non-Competition Agreements

Loparex' other argument against Mr. Kerber's Counterclaim is that because Indiana permits employers to specifically enforce non-competition agreements without incurring blacklisting liability, Indiana law should also shield employers seeking to protect their trade secrets.

That proposition, even if true—and Mr. Kerber doesn't appear to dispute it—doesn't require a dismissal of Mr. Kerber's Counterclaim. While the Anti-Blacklisting statute may carve out successful enforcements of non-competition agreements, it "offers no safe harbors for unsuccessful lawsuits." *Lockhart*, 5 F. Supp. 2d at 688. Loparex' Illinois litigation seeking to prevent Mr. Kerber from working at MPI was completely unsuccessful, thus potentially subjecting Lopa-

---

[3] Indeed, Loparex doesn't even specifically argue that *Young* was correctly decided then or would be decided the same way today.

rex to liability. To the extent that Loparex can't establish at least a trade-secret violation in its Complaint here against Mr. Kerber, this action may also subject Loparex to liability because Loparex seeks to permanently enjoin Mr. Kerber from all work with MPI, [dkt. 76 at 19 ¶c].[4] *See Burk v. Heritage Food Serv. Equip.*, 737 N.E.2d 803, 818 (Ind. Ct. App. 2000) (dicta) (rejecting Anti-Blacklisting claim because the ex-employee "made no showing that Tri-State attempted to prevent her from obtaining employment at Bowman," but instead only showed that "Tri-State has attempted to enforce a covenant prohibiting activities that Burk might have engaged in as a Bowman employee.").

Thus, even assuming that the Anti-Blacklisting statute treats actions to protect trade secrets the same way that it does actions to enforce non-competition agreements, Loparex hasn't shown that Mr. Kerber has failed to state a claim.

## IV.
## Conclusion

Loparex' motions to dismiss the Counterclaims by Messers. Odders and Kerber, [dkt. 124, 126], are both **DENIED**.

02/17/2011

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

---

[4] At this time, the Court need not consider how only a partial victory in the underlying Complaint would potentially impact liability under Ind. Code § 22-5-3-2.

Lisa A. Baiocchi
JACKSON LEWIS LLP
lisa.baiocchi@jacksonlewis.com

Jeffrey B. Halbert
STEWART & IRWIN P.C.
jhalbert@silegal.com

Donald E. Knebel
BARNES & THORNBURG LLP
donald.knebel@btlaw.com

Charles W. Pautsch
JACKSON LEWIS LLP
charles.pautsch@jacksonlewis.com

Jennifer Lynn Schuster
BARNES & THORNBURG LLP
jschuster@btlaw.com

Aaron M. Staser
BARNES & THORNBURG LLP
aaron.staser@btlaw.com

Lynn C. Tyler
BARNES & THORNBURG
lynn.tyler@btlaw.com

Richard P. Winegardner
BARNES & THORNBURG LLP
rwinegar@btlaw.com