UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LOPAREX, LLC,<br>    *Plaintiff*, | )<br>)<br>) | |
| *vs*. | ) | 1:09-cv-01411-JMS-TAB |
| | ) | |
| MPI RELEASE TECHNOLOGIES, LLC, GERALD<br>KERBER, and STEPHAN ODDERS,<br>    *Defendants*. | )<br>)<br>) | |

## **ORDER**

Presently before the Court is Defendants' Motion for Discovery Sanctions. [Dkt. 143.]

### **I.**
### **BACKGROUND**

In this action, Plaintiff Loparex, LLC, sued the Defendants for alleged trade-secret misappropriation and related causes of action. The Court has recently granted Defendants summary judgment on Loparex's claims. [Dkt. 275.] The case isn't, however, over because two of the Defendants are pursuing a counterclaim against Loparex, for alleged violations of Indiana's anti-blacklisting statute, Ind. Code § 22-5-3-2.

The litigation has been heated, on both sides, with sanctions motions levied back and forth. A large portion of the present motion concerns allegations of misconduct during accelerated discovery necessitated by Loparex's motion for preliminary injunction, a motion that Loparex withdrew about two months into the case and before any hearing could be held on it. [*See* dkt. 72.] Essentially, the Defendants charge Loparex with gamesmanship in the content and timing of its responses to their discovery requests and with failing to keep the deposition schedule that the parties negotiated, [dkt. 49]. That gamesmanship, they say, also resulted in the non-production of documents that they were forced to obtain through non-party discovery, in Minne-

sota. Rather than detail the allegations of misconduct here, the Court will—given the wide-ranging nature of Defendants' allegations—discuss the specifics below, as they become relevant.

## II.
### DISCUSSION

The Defendants lodge multiple accusations of discovery misconduct against Loparex, in connection with Loparex's responses to their document requests and interrogatories and in connection with deposition practice. Before discussing those accusations, however, the Court must first discuss the particular standards governing sanctions that the Defendants argue have been triggered here.

**A. Sanctions Standards**

Defendants have directed the Court to two provisions of the Federal Rules of Civil Procedure that authorize sanctions. The first provision is Rule 26(g)(3). As is relevant here, no attorney may sign a discovery response that the attorney knows or reasonably should know is designed to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. Pro. 26(g)(1)(B)(ii). If an attorney does so, Rule 26(g)(3) permits sanctions—"including attorney's fees"—against the attorney and/or the party. Fed. R. Civ. Pro. 26(g)(3). The second provision Defendants have cited is rule 37(d)(1)(A)(i), which permits sanctions if "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition."[1]

---

[1] Defendants also note, [*see* dkt. 145 at 16], that Rule 37(d) permits sanctions if a party fails to respond to written discovery. Fed. R. Civ. Pro. 37(d)(1)(A)(ii). Defendants don't appear to seek a sanction under that provision. To the extent, if any, that they do, no sanction will issue because Defendants have presented no evidence that Loparex failed to actually serve discovery responses. The Defendants' complaint concerns the adequacy of those responses, an inquiry governed under Rule 26(g)(3).

Both Rule 26 and 37 condition sanctions upon a finding of "willfulness, bad faith, or fault," *Am. Nat'l Bank & Trust Co. v. Equitable Life Assur. Soc'y of the U. S.*, 406 F.3d 867, 877 (7th Cir. 2005) (quotation omitted), with fault defined to mean objective unreasonableness, *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992). Under existing, although perhaps unsettled, Seventh Circuit authority, that finding must rest upon clear and convincing evidence—rather than the normal preponderance of the evidence—before a court can resort to the sanction of dismissal. *See Wade v. Soo Line R.R. Corp.*, 500 F.3d 559, 564 (7th Cir. 2007) (expressing "doubt" that prior Seventh Circuit authority requiring clear and convincing evidence before dismissals actually comports with Supreme Court authority, but finding the case unsuitable to overrule that authority). In any event, whatever sanction is imposed under the Rules "should fit the crime, so fees and fines—which can be scaled as appropriate—often are the best sanctions." *Id.*

Defendants invoke 28 U.S.C. § 1927 as their next source of sanctions authority. That statute holds attorneys personally liable for "excess costs, expenses, and attorneys' fees reasonably incurred" from the attorney's "unreasonabl[e] and vexatious[]" litigation conduct. *Id.* Bad faith is required for a § 1927 award, but there is a distinction between subjective and objective bad faith. *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006). Subjective bad faith, which is more difficult to prove, is not always necessary and "must be shown only if the conduct under consideration had an objectively colorable basis." *Id.* Objective bad faith does not require a finding of malice of ill will; instead, reckless indifference to the law will qualify. *Id.*

Finally, apart from the positive enactments of sanctions authority discussed above, the Court also possesses "the inherent power to sanction for conduct which abuses the judicial process." *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993) (citation omitted). Sanc-

tions can range up to dismissal, so long as the sanction is proportionate to the misconduct. *See id.* (quotation omitted).

## B. Loparex's Document Productions

The Defendants complain about the Loparex's document production in several respects.

First, they argue that Loparex produced voluminous, unresponsive documents in response to their document requests. [*See* dkt. 145 at 9.] Trying to overwhelm opposing counsel with irrelevant documents when preparing for depositions—especially in connection with an accelerated discovery schedule—is, of course, highly improper. *See, e.g.*, *Rothman v. Emory Univ.*, 123 F.3d 446, 455 (7th Cir. 1997) (approving award of sanctions where party had "blatantly (and repeatedly) rebuffed his obligation to sort through the documents and produce only those responsive to Emory's request"). Because Defendants haven't provided the Court with the allegedly irrelevant documents, however, the Court lacks any evidentiary basis to find that Loparex engaged in sanctionable overproduction rather than find, as Loparex contends, that overly broad discovery requests caused the voluminous production, [dkt. 156 at 12-14.][2]

Second, the Defendants accuse Loparex of gamesmanship with respect to the timing of its document productions. [*See* dkt. 145 at 12.] They say that Loparex withheld some documents until after the depositions were complete but before the hearing on the preliminary injunction. But assuming without deciding that the timing was improper—again, the Court can't tell whether the documents were actually responsive to a discovery request without examining the documents

---

[2] It's not clear whether the Defendants additionally accuse Loparex of failing to specify which documents responded to which request. [*See* dkt. 166 at 6.] To the extent, if any, that they make such an argument, the Court rejects it. So long as Loparex produced the documents as they were ordinarily kept—and the Defendants make no argument to the contrary—Loparex had no obligation to organize them according to the document request. Fed. R. Civ. Pro. 34(b)(2)(E)(i)("A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."). *See also* Fed. R. Civ. Pro. 33(d) (permitting parties to produce records in lieu of interrogatory responses).

themselves—the Defendants suffered no prejudice.  Loparex ultimately withdrew its motion for preliminary injunction, [dkt. 72].  At most, given the proportionality requirements, the Defendants would have been entitled to reopen the depositions.  They have, however, prevailed on summary judgment, [dkt. 275], so it's a moot issue now.

Third, the Defendants complain that Loparex redacted potential trade-secret information from its document productions while "plann[ing] to give unredacted versions of these documents to the Court" at the preliminary injunction hearing.  [Dkt. 145 at 12.]  But the Court refused to consider any *ex parte* submissions, [dkt. 86], Loparex withdrew its motion for preliminary injunction, [dkt. 72], and the Defendants prevailed on summary judgment (which didn't involve any *ex parte* submissions either).  The redaction issue is also moot.

Fourth, the Defendants object to having to undertake third-party discovery in Minnesota to obtain responsive documents that Loparex had produced in another action.  [*See* dkt. 145 at 5-9.]  Inasmuch as Loparex offers no defense of its non-production of those documents in this action, [*see* dkt. 156 at 13-15], the Court will find that Loparex's failure to produce them inexplicable and objectively unreasonable.  To make the Defendants whole for having had to go obtain a court order for their production in Minnesota, the Court will permit the Defendants to recover their attorneys' fees and expenses incurred in obtaining the January 20, 2010 production order in Minnesota.  [*See* dkt. 144-15 at 33.]

Next, the Defendants accuse Loparex of making material misrepresentations (if not worse) to the Minnesota court when opposing the non-party discovery discussed above.  [Dkt. 145 at 7-8.]  In connection with their motion for sanctions filed there, the Minnesota court has found any misrepresentations to have been inadvertent and non-sanctionable.  *See In re: Subpoena to Briggs & Morgan, P.A.*, 0:10-mc-0002-MJD-SER, dkt. 51 at 7 (D. Minn. June 4, 2010)

("[T]he Court does not see evidence of intentional misconduct that warrants the entry of sanctions or an award of attorney's fees…."). Having submitted the issue of misconduct to the District of Minnesota, the Defendants are bound by that court's determination. If they are unhappy with the ruling, any relief must come from the Eighth Circuit. This Court lacks jurisdiction to review the decisions of other district courts. No sanctions on this point can or will issue from this Court.

Finally, the Defendants seek to have Loparex forfeit all privileges for failing to produce a privilege log. While Loparex doesn't dispute that a log would normally be required—except for post-litigation communications, which the parties have agreed needn't be logged, [dkt. 130]—Loparex contends that it possesses "no communications that would generate a privilege log." [Dkt. 156 at 16.] That statement is supported by an affidavit of counsel. [Dkt. 158-1 ¶27.] It is also supported by an affidavit of a client representative that Loparex's discovery responses "are currently complete and accurate." [Dkt. 254 ¶3.] Despite the Defendants' belief that it is "unlikely" that there would be no documents to log "[i]n this day and age," [dkt. 166 at 3], the Court accepts the sworn representations to the contrary. *See Rosenthal Collins Group, LLC v. Trading Techs. Int'l, Inc.*, 2011 U.S. Dist. LEXIS 17623, *19 (N.D. Ill. 2011) ("The judicial system is premised on the honest, good faith efforts of the parties involved." (citation omitted)). In any event, because Loparex doesn't claim any privileges over responsive documents, the privilege forfeiture that Loparex seeks is moot; there's nothing to forfeit.

**C. Loparex's Response to the Defendants' Interrogatories**

The next category of potential discovery misconduct concerns Loparex's interrogatory responses. In brief, they complain that when Loparex was asked to identify the trade secrets it contended were at issue in this action, Loparex offered up only general answers, devoid of the

specificity required in trade-secrets actions. [Dkt. 145 at 13.] Whether or not the interrogatory responses were too vague to comport with Loparex's discovery obligations, the Court finds no sanction could be appropriate. If the Defendants actually wanted more specificity in the interrogatory responses, they could have moved to compel Loparex to make a more specific answer. *See* Fed. R. Civ. Pro. 37(a)(4) (deeming an "evasive" answer the same as a failure to answer for the purposes of a motion to compel). They didn't do so. Rather, they chose to argue—at some length—in their motion for summary judgment that Loparex's trade-secret claim fails as a matter of law due to Loparex's inability to articulate what, exactly, constitutes its trade secrets. [*See, e.g.*, dkt. 106 at 24-25 (discussing Loparex's interrogatory answers).] The Court ultimately agreed that Loparex's claim of trade secrets is too general to be actionable. [*See* dkt. 275.] Any misconduct associated with an overly general interrogatory answer not only caused no prejudice to the Defendants, it actually aided them. Whatever just deserts that may have been due have already been had.

### D. Loparex's Behavior in Connection with Depositions

The Defendants also complain about Loparex's behavior in connection with the depositions that the parties took to prepare for the aborted preliminary injunction hearing.

First, the Defendants contend that Loparex drug out Mr. Kerber's deposition longer than needed by asking irrelevant questions, thereby upsetting the deposition schedule that the parties had agreed to and filed, [*see* dkt. 49]. But the Court can't say that the few questions that Defendants cited in their brief—amounting to three pages of deposition transcript—are so beyond the pale that sanctions should issue even though Defendants didn't invoke their right to telephone the Magistrate Judge for assistance during the deposition and/or to "move to terminate…[the deposition] on the ground that it is being conducted in bad faith or in a manner that unreasonably an-

noys, embarrasses, or oppresses the deponent or party," Fed. R. Civ. Pro. 30(d)(3)(A).  [*See* dkt. 145 at 4 (citing questions about relationship with another ex-employee engaged in litigation with Loparex, about fishing trips, about restoring a vintage truck, and Hawaiian vacations).]

The other complaint about Loparex's deposition conduct concerns Loparex's unilateral termination of two depositions that the Defendants had noticed:  that of Dr. Podsiadly and that of James Miksta.

With respect to Dr. Podsiadly's deposition, Loparex announced that it was terminating the deposition because Loparex's counsel believed that opposing counsel had "pressed the envelope past oppression."  [Dkt. 145-2 at 42.]  Loparex's counsel indicated that the parties would "talk to the court [the next day]," [*id.*], thereby invoking Loparex's termination right under Fed. R. Civ. Pro. 30(d)(3)(A).  The basis for the oppression, according to Loparex's counsel, was that the Defendants were "going through thousands of documents individually, without regard to their content, and… [did] so with a highly unprofessional manner that derisively mocked Loparex's witness."  [Dkt. 156 at 12.]

Because it never actually contacted the Court, Loparex evidently decided—as the Court now does—that its position was misplaced.  The Defendants were entitled to review with the witness, up to the time limit authorized for the deposition, the documents that Loparex had produced during discovery.[3]  And while derisive conduct toward a deponent would be impermissible, Loparex has been unable to cite a single page in the transcript that it contends demonstrates that derision.  [*See* dkt. 156 at 12.]  While Loparex ultimately agreed to resume the deposition (the next day), that is exactly the result that would have obtained had Loparex sought the Court's

---

[3] Especially where a party has evidently decided to take an expansive view of a discovery request, the party should not be surprised if opposing counsel undertakes a document-by-document review during the deposition of a corporate representative.

assistance, with one exception. The Defendants would have been entitled to a fee award as well, given the lack of substantial justification for Loparex's position. *See* Fed. R. Civ. Pro. 30(d)(3)(C) (applying Rule 37(a)(5) to the award of expenses with the prevailing party in a motion to terminate the deposition); 37(a)(5) (creating a presumption of fees to the prevailing party in a discovery dispute). Given that Loparex's conduct here undoubtedly permitted it another evening to better prepare its witness for the deposition, which might have made obtaining useful evidence more difficult, the Court finds that the only just sanction here is to award the Defendants their attorneys' fees and expenses for the resumed deposition.

Loparex's early termination of Mr. Miktsa's deposition occurred at 5:00 p.m., out of a concern for adverse winter weather and, therefore, stands on an entirely different footing. [Dkt. 144-2 at 3; 156-1 ¶18.][4] Had the parties contacted the Court, the Court would have permitted the deposition to be rescheduled another day. Inasmuch as the Defendants don't request the Mr. Miksta's deposition be re-opened, the only possible relief the Court would consider under the circumstances, the Court awards no relief with respect to this item.

* * * * * *

In conducting the analysis set forth above, the Court has purposively not mentioned Loparex's attempted "recrimination" defense, which permeated much of its response brief, [*see, e.g.*, dkt. 156 at 7 ("[I]t is puzzling to imagine how mutual fault, which necessarily means equal culpability for the Defendants, could somehow be the basis for an award of sanctions against Loparex….").] That defense was a pure non-starter. *Cf. Redwood v. Dobson*, 476 F.3d 462, 469 (7th Cir. 2007) ("Instead of declaring a pox on both houses, the district court should have used

---

[4] The Court rejects the Defendants' position that the affidavit from Loparex's counsel is incompetent evidence because it was e-signed, rather than signed by hand. The Defendants don't dispute the accuracy of the adverse weather conditions.

its authority to maintain standards of civility and professionalism. It is precisely when animosity runs high that playing by the rules is vital. Rules of legal procedure are designed to defuse, or at least channel into set forms, the heated feelings that accompany much litigation."). Where sanctionable conduct occurred, the Court has imposed sanctions irrespective of alleged mutual fault.

### III.
#### CONCLUSION

Defendants' Motion for Discover Sanctions, [dkt. 143], is **GRANTED IN PART** and **DENIED IN PART**. It is granted to the extent that Defendants may recover from Loparex the attorney's fees and expenses they incurred in obtaining the documents ultimately ordered produced in the January 20, 2010 order from the Minnesota court. The documents that were ordered produced there should have been produced in response to Defendants' discovery requests in this action. The motion is also granted to the extent that the Defendants may recover their fees and expenses incurred during the resumption of Dr. Podsiadly's deposition, on January 7, 2010. Absent a motion filed with the Court to terminate the deposition—which Loparex never filed—Loparex was objectively unjustified in prematurely terminating the deposition. In all other respects, Defendants' motion is denied.

If the parties are unable to agree on the appropriate amount of fees and expenses authorized by this Order, Defendants must file their fee petition within fourteen days. Any objections will be due fourteen days thereafter, to which Defendants may respond in an additional seven days.

03/25/2011

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Lisa A. Baiocchi
JACKSON LEWIS LLP
lisa.baiocchi@jacksonlewis.com

Donald E. Knebel
BARNES & THORNBURG LLP
donald.knebel@btlaw.com

Michael W. Padgett
JACKSON LEWIS LLP
padgettm@jacksonlewis.com

Charles W. Pautsch
JACKSON LEWIS LLP
charles.pautsch@jacksonlewis.com

Jennifer Lynn Schuster
BARNES & THORNBURG LLP
jschuster@btlaw.com

Lawrence Bryant Shulman
JACKSON LEWIS LLP
shulmanl@jacksonlewis.com

Aaron M. Staser
BARNES & THORNBURG LLP
aaron.staser@btlaw.com

Lynn C. Tyler
BARNES & THORNBURG
lynn.tyler@btlaw.com

Melissa S. Vare
JACKSON LEWIS LLP
varem@jacksonlewis.com

Richard P. Winegardner
BARNES & THORNBURG LLP
rwinegar@btlaw.com