UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LOPAREX, LLC, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs.* | ) | 1:09-cv-01411-JMS-TAB |
| | ) | |
| MPI RELEASE, LLC, *et al.*, | ) | |
|     *Defendants.* | ) | |

## ORDER

The Court entered final judgment in this action (1) against Plaintiff Loparex, LLC ("Loparex") and in favor of the Defendants MPI Release, LLC ("MPI"), Gerald Kerber, and Stephan Odders (collectively the "MPI Defendants") with respect to the claims in the Complaint and (2) against Mr. Kerber and Mr. Odders and in favor of Loparex on their counterclaims. [Dkt. 336.] Presently before the Court now are three motions. First, the MPI Defendants seek their attorney's fees under the Illinois Uniform Trade Secrets Act ("IUTSA"), 765 Ill. Comp. Stat. §§ 1065/1 - /9; 28 U.S.C. § 1927, or both. [Dkt. 339.] Additionally the MPI Defendants and Loparex have filed dueling bills of costs. [Dkts. 338, 345.]

### I.   BACKGROUND

The Court incorporates by reference the findings of fact that it made on summary judgment. [Dkt. 275.]

**A.  Proceedings in Illinois**

Before its reincarnation here, this action began in Illinois, first state court but then removed to the Northern District of Illinois. [*See* dkt. 136-1.] At that time, Loparex had sued only one defendant, Mr. Kerber, alleging violations of the IUTSA and a non-competition agreement. [*Id.*] Loparex promptly moved for a TRO seeking, among other things, an emergency and then preliminary injunction against Mr. Kerber "working for MPI or any other Plaintiff competitor,"

- 1 -

in any capacity. [Dkt. 136-2 at 11.] At a conference on the motion, U.S. District Judge Lefkow told Loparex that, at that time, she would not schedule a hearing on the motion because Loparex had not pinned down its alleged trade secrets. [Dkt. 136-3 at 17 ("I don't think you have identified protectable trade secrets. This is a very broad list of claimed—or of secrets, supposedly, that I think largely are under the umbrella of skill that he's developed having worked in this industry for such a long time.").] She invited Loparex to "narrow" its claims to something that Illinois law might recognize, perhaps "some kind of formula that you can prove that [Mr. Kerber] knows about," and, if it did, the judge said that she would set the motion for hearing. [*Id.*] In the interim she denied the motion without prejudice and told Loparex: "[Y]ou do have the burden of specifying what the trade secrets are, you know. This is a man who is not—apparently not a person of great means, and I'm not going to allow you to litigate him to death…. [T]he burden is on you to be specific…." [*Id.* at 19.]

About two weeks after the hearing before Judge Lefkow, Loparex voluntarily dismissed its action in the Northern District of Illinois. *Loparex, LLC v. Kerber*, 1:09-cv-6615 [dkt. 16] (N.D. Ill. Nov. 10, 2009). Loparex had not made any attempt on the docket to narrow its categories of alleged trade secrets.

### B. Proceedings in this Court

A few days after dismissing the action in the Northern District of Illinois, Loparex filed the present action, this time naming not only Mr. Kerber but also Mr. Odders and MPI as Defendants. [*See* dkt. 1.] As to all three Defendants, the Complaint asserted violations of Indiana's

version of the IUTSA and other state-law claims. [*See id.*]¹ Among other things, Loparex alleged the following:

> 56.    Odders, Kerber, and MPI misappropriated Loparex's trade secrets by using those trade secrets by preparing and submitting bids to Loparex's clients and/or potential clients which directly competed with bids Loparex had submitted or intended to submit.
>
> 57.    Odders, Kerber and MPI misappropriated Loparex's trade secrets by using those trade secrets to attempt to lure Loparex's clients and/or potential clients away from Loparex…..
>
> 60.    Loparex has suffered and continues to suffer irreparable harm, monetary damages and damage to its reputation as a result of Defendants' unlawful conduct.

[*Id.*] Included in the prayer for a relief was a prayer that the Court enjoin Mr. Kerber and Mr. Odders from any employment with MPI, regardless as to the nature of the employment. [*Id.* at 15.]

Concurrently with its Complaint, Loparex included a motion for a temporary restraining order and preliminary injunction. [Dkt. 9.] In the brief, Loparex extracted what it believed were its trade secrets alleged in the Complaint. [Dkt. 10.] As to Mr. Kerber, the alleged trade secrets were the same as the ones that Loparex had presented to Judge Lefkow but which she ruled too vague to proceed. *Compare* [*id.* at 3-4], *with Loparex, LLC v. Kerber*, 1:09-cv-6615 [dkt. 6 at 3-4] (N.D. Ill. Oct. 22, 2009). As to Mr. Odders and MPI, Loparex referred the Court to paragraph 12 of the Complaint, [dkt. 10 at 5], which alleged trade secrets in "Loparex's expenditures to develop and establish a stable customer base, developing confidential pricing methods, developing marketing plans and strategies, confidential and proprietary client files, client information,

---

¹ In apparent response to Judge Lefkow's skeptical assessment of the validity of Mr. Kerber's non-competition agreement, Loparex did not reassert that claim.

software, forms, technical information, internal processes and procedures, business model, pricing, costs, and profit margins….," [dkt. 1 ¶12].

Shortly before the conference on the motion for preliminary injunction, Loparex requested leave to amend its Complaint. [Dkt. 66.] The amendment sought to take account of the "substantial discovery" that had been undertaken. [*Id.* ¶2.] Essentially that meant adding a new claim against Mr. Odders, alleging breach of his non-competition agreement. [*Id.* ¶13.] But the paragraphs from the Complaint quoted above remained in the Amended Complaint, which Loparex was eventually given leave to file. [Dkt. 76 ¶¶ 62, 63, 66.]

At a conference to discuss the motion for preliminary injunction, the Court advised Loparex that its description of the trade secrets at issue, including the disclosures made in its interrogatories, was too general to suffice, as was true in the Northern District of Illinois. [Dkt. 86 at 10 ("[Y]ou brought this lawsuit and have the burden of proof, and you have a particularized burden here with a request for preliminary injunction to show that specific trade secrets were misappropriated.").] Despite the allegation in Paragraph 56 of the Complaint (and Paragraph 66 of the Amended Complaint) that actual misappropriation had occurred, Loparex withdrew the motion after the conference citing its inability to establish "actual misappropriation," [dkt. 69 ¶4], even despite "substantial discovery" undertaken in preparation for the hearing, [*id.* ¶2].

Between the conference and the Court's grant of summary judgment in favor of the Defendants on Loparex's Complaint, "what should [have been] a straightforward trade secrets case … resulted in an abnormally high number of discovery disputes, not to mention multiple motions for sanctions." [Dkt. 270 at 8.] But only two disputes are relevant here.

First, the Court sanctioned Loparex for forcing Defendants to undertake third-party discovery in Minnesota to obtain documents that should have been produced in this action. [Dkt.

276 at 5.] The withholding of the documents was "inexplicable and objectively unreasonable." [*Id.*] As a result, the Court awarded Defendants their fees incurred in chasing down the documents.[2]

Second, Magistrate Judge Baker denied a Loparex motion to compel filed about two days after the Court had reminded counsel for both sides, "that while they can and should zealously advocate for their clients, zealous advocacy does not equate with a total-war mentality toward litigation. Such an approach, needlessly increases litigation costs for both sides, delays the Court's consideration of other parties' cases, and ultimately detracts from the public's perception of the federal justice system." [Dkt. 270 at 8.] In denying the motion, Magistrate Judge Baker noted that the admonition "fell on deaf ears" because Loparex's lead counsel, Charles Pautsch, launched an "email missive" to defense counsel, rather than attempting good-faith negotiations over the discovery dispute. [Dkt. 288 at 2, 3.]

The other proceeding that bears upon the present motion is the Court's grant of summary judgment against Loparex on its Amended Complaint. After finding that Illinois rather than Indiana law applied, without objection from Loparex, the Court held among other things that Loparex could not prevail because it had failed to articulate what its claimed trade secrets were—precisely the problem that both Judge Lefkow and the Court had previously warned Loparex about. [Dkt. 275 at 13 ("In connection with Loparex's (aborted) pursuit of a preliminary injunction, the Court warned Loparex about the need for it to specify the trade secret or secrets it claims are at issue in this action…. Loparex has run out of time to pin down its trade secrets." (citation omitted).] With respect to Mr. Odders, "Loparex … offered absolutely no argument

---

[2] The Defendants advise that they have carved out those fees from the present fee petition. [Dkt. 340 at 20.]

that Mr. Odders has misappropriated any trade secrets that Loparex believes it has." [*Id.* at 14.][3] Further, Loparex had "absolutely no evidence" that MPI had developed any new product "that resembles any Loparex product," despite the years that the litigation had been pending. [*Id.* at 14-15.] Indeed, as the Court noted in discussing another state-law claim, Loparex had no evidence that it had ever "lost at least one actual or potential customer." [*Id.* at 17.]

After the Court granted summary judgment on Loparex's claims, but while the Defendants' counterclaims were still pending, Loparex asked the Court to enter partial judgment, so that it could take an immediate appeal. [Dkt. 282.] The Court denied that motion. [Dkt. 297.] The Defendants' fee petition does not seek fees following the denial of the motion for partial judgment, except with respect to the fees associated with preparing and defending their fee petition. [Dkt. 340 at 20.]

### C. Charles Pautsch

Throughout the course of this action, until the fee petition, Charles Pautsch served as lead counsel for Loparex. The day after being served with a copy of the MPI Defendants' fee petition, he sought leave to withdraw, which was granted. [Dkts. 346, 348.]

Although he has not filed a brief opposing the MPI Defendants' motion for sanctions again him, Mr. Pautsch did file an affidavit in defense of his conduct. [Dkt. 357-2.][4] He did not request any evidentiary hearing or oral argument to supplement his affidavit.

---

[3] The Court rejected the arguments regarding Mr. Kerber. [*Id.*]

[4] The Court finds it significant that while Mr. Pautsch and his co-counsel submitted affidavits attesting to their good faith, [*see id.*; dkt. 357-2, -3, -4], no client representative submitted such an affidavit. The only affidavit from the client tendered in connection with this motion was the affidavit that was filed in support of the motion for temporary restraining order and preliminary injunction. [Dkt. 357-1.] With respect to the other counsel's affidavits, while the Court has considered them, the Court need not summarize them here because the only sanctions under § 1927 that the Court will issue are against Mr. Pautsch, who seems in any event to be the intended target of the MPI Defendants' motion.

Mr. Pautsch's affidavit recounts his extensive experience as a litigator of trade-secret cases, over his thirty-five year career. [Dkt. 357-2 ¶2.] He summarizes what he views as the highly suspicious circumstances that surrounded Mr. Kerber's and Mr. Odders' departure from Loparex, their hire at MPI. In response to the MPI Defendants' complaint that he threatened criminal prosecution against them, Mr. Pautsch notes: "It is not unusual in matters concerning unfair competition and employee departure for a former employer to assert claims of tortious or even criminal activity with respect to a former employee's new employment." [*Id.* ¶14.] Nothing in the affidavit suggests that Mr. Pautsch ever tried to rein his client in or otherwise moderate the client's litigation position.

## II. DISCUSSION

### A. The MPI Defendants' Motion for Attorney's Fees Under Illinois Law[5]

The IUTSA permits a defendant to obtain "reasonable attorney's fees" for defending against "a claim of misappropriation [of trade secrets] … made in bad faith." 765 Ill. Comp. Stat. § 1065/5. Although no Illinois case appears to have construed what "bad faith" means, the MPI Defendants assert, [dkt. 340 at 11], and Loparex does not dispute, [*see* dkt. 357 at 12-13], that the appropriate test "requires the party seeking relief to establish both that statements in the pleadings were untrue and that they were made without reasonable cause," *Bouhl v. Gross*, 478 N.E.2d 620, 626 (Ill. App. Ct. 4th Dist. 1985) (citation omitted) (construing former 735 Ill.

---

[5] Loparex's brief on the motion for attorney's fees has needlessly frustrated the Court's review of this matter, in two ways. First, the brief eschews citations to the record, on the premise that "precise citations are no longer necessary." [Dkt. 357 at 3.] Because the Court must confine its review of any motion to the record available, precise citations are, in fact, needed. Second, the brief engages in lengthy legal discussions about trade-secret law but without any real attempt to tie the discussion to the facts at hand and whether those facts rise to the level of bad faith. While the Court has tried its best to sort through the facts and law here, to whatever extent that Loparex's briefing strategy has caused the Court to overlook beneficial facts or arguments, the Court deems them waived for lack of cogent development.

Comp. Stat. § 5/2-611), in light of "circumstances existing at the time of the filing," *Bennett & Kahnweiler v. American Nat'l Bank & Trust Co.*, 628 N.E.2d 426, 430 (Ill. App. Ct. 1st Dist. 1993) (citation omitted) (construing Ill. Sup. Ct. R. 137).  The Court will examine each of the two components in turn.  Finding that the MPI Defendants have established them, the Court will then set the amount of the fee award.

With respect to the first component of the bad-faith analysis, falsity, the Court's summary judgment order established that all the substantive allegations in the Complaint and Amended Complaint were false, especially as is relevant here those in Paragraphs 56, 57, and 60 (and their counterparts in the Amended Complaint) concerning actual illicit use of trade secrets and damages to Loparex.  Indeed, nothing in Loparex's Response argues for the truth of those allegations in the Complaint and/or Amended Complaint.  [*See* dkt. 357.]

As for the second component, unreasonableness at the time, the Court finds it satisfied, too.  Even though Loparex does not dispute that the relevant test requires the Court to assess the reasonableness of filing the Complaint without the benefit of hindsight, Loparex devotes the majority of its brief to facts uncovered and events that occurred after the filing of the Complaint.  [*See* dkt. 357.]  It makes no attempt at all to justify why any reasonable person would have believed that Loparex's Complaint adequately pleaded the existence of trade secrets when Judge Lefkow had rejected the same allegations as insufficient.  And regardless as to Loparex's claimed inabilities to nail down facts in discovery as to the MPI Defendants' conduct, the facts regarding any competition between MPI and Loparex, lost sales, or other damages were within Loparex's own files.  Loparex makes no effort to justify why a reasonable person would have believed that Loparex had suffered damages when Loparex's own files apparently show none.

To whatever extent that subjective motivations are relevant under Illinois law, and neither party expressly claims that they are, the Court finds that this action was essentially a vendetta against Mr. Kerber and Mr. Odders designed, as Judge Lefkow presciently warned, to litigate them "to death," rather than out of a genuine concern about protecting intellectual property. This is apparent from Loparex's repeated attempts to enjoin them from working at MPI in any capacity and in any place, even after the passage of time had made clear that, if Loparex had any trade secrets, Mr. Kerber's and Mr. Odders' knowledge of them had grown stale.

Turning now to the amount of the fees, the MPI Defendants submitted attorney affidavits and bills to support their fee request of $475,332.70. They maintain that the amount excludes fees associated with non-trademark claims and the sanctions that the Court previously awarded. [*See* dkt. 340 at 20.]

Loparex's Response did not challenge the reasonableness of the fees requested, [*see* dkt. dkt. 357], which have already been paid by the client and are thus presumptively reasonable, *see Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008) (citations omitted). Instead it chose to defend the fee petition solely on the grounds that no fees are appropriate at all, in two respects. First, Loparex argued that it acted in good faith, [*see* dkt. 357 at 12], an argument that the Court has rejected as outlined above. Second, primarily citing case law regarding § 1927—and none under the IUTSA—Loparex argues that the MPI Defendants' "unclean hands" and their "bad faith" should preclude an award of fees. [*See* dkt. 357 at 13, 23.][6] But the fee-shifting provision arises under Illinois law, and Loparex has cited no Illinois authority suggesting that such defenses, if proved, would bar the fee-shifting that the Illinois General Assembly has otherwise author-

---

[6] Given the nature of the Response brief, it is not entirely clear whether the argument was addressed to the fees under the IUTSA or under § 1927. To the extent that Loparex discusses Indiana spoliation law, Loparex offers no explanation as to how those principles are relevant to a case involving Illinois law.

ized. Because the Court relies upon adversarial presentation, the Court will not tackle the issue without guidance from Loparex. Accordingly, the Court will award the MPI Defendants their requested fees in full.[7]

### B. The MPI Defendants' Motion for Attorney's Fees Under 28 U.S.C. § 1927

Congress has authorized the judiciary to require attorneys to personally satisfy fees and costs imposed through vexatious litigation: "Any attorney … in any court of the United States … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. In the Seventh Circuit, district courts have discretion to make an award under § 1927 in several circumstances:

> [A] court has discretion to impose § 1927 sanctions when an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice; pursued a claim that is without a plausible legal or factual basis and lacking in justification; or pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound. We have also interpreted § 1927 to impose a continuing duty upon attorneys to dismiss claims that are no longer viable.

*Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (quotations omitted).

Bad faith is required for a § 1927 award, but there is a distinction between subjective and objective bad faith. *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006). Subjective bad faith, which is more difficult to prove, is not always necessary and "must be shown only if the conduct under consideration had an objectively colorable basis." *Id*. Objective bad faith does not require a finding of malice or ill will; instead, reckless indifference to the law will qualify. *Id.* The Court has discretion to impose § 1927 sanctions when an attorney has acted in an

---

[7] The MPI Defendants also indicate that they wish to obtain fees for preparing and defending their fee petition. [Dkt. 340 at 20.] They have not, however, cited any Illinois authority permitting such a recovery. [*See id.*] Absent such authority, the Court will not authorize the award.

objectively unreasonable manner by pursuing a claim that is without a plausible legal or factual basis. *Jolly Group*, 435 F.3d at 720.

Loparex argues that the same conduct that justifies awarding fees under the IUSTA supports an award of fees under § 1927.[8] Although several attorneys have represented Loparex in this action, the briefing does not explicitly specify which attorneys are the target of the § 1927 motion. [*See* dkt. 340 at 15-18.] Nonetheless the bulk of the misconduct is alleged against lead counsel, Mr. Pautsch. To whatever extent misconduct might have been proven against Loparex's other counsel, the Court will only consider § 1927 given his leadership role and given the Court's familiarity with his vexatious conduct.

As explained above, the Court has already found that MPI's pursuit of its IUTSA claim was, from the very outset, unreasonable. He could and should have intervened when MPI sought a take-no-prisoners litigation strategy. As an enabler of the client's unreasonable litigation desires, he becomes personally liability for them, too. *See In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985) ("If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious…. Section 1927 permits a court to insist that the attorney bear the costs of his own lack of care.").

While Mr. Pautsch did not file a brief defending his conduct, despite having had the opportunity to do so, Loparex suggested on his behalf that defense counsel's alleged unclean hands—i.e. what Loparex views as unreasonably aggressive litigation from the other side— ought to preclude any award under § 1927. [*See* dkt. 357 at 15, 23.] But the Court has already rejected, and does so again, an if-you-can-do-it-I-can-do-it-too attitude toward litigation misconduct. [Dkt. 276 at 9, *citing Redwood v. Dobson*, 476 F.3d 462, 469 (7th Cir. 2007) (criticizing

---

[8] The MPI Defendants do not argue that any other causes of action besides the IUTSA merit fees.

district court for declaring "a pox on both your houses").] Had Mr. Pautsch, or Loparex, filed a § 1927 motion against defense counsel and established unreasonable behavior on defense counsel's part, the Court would have entered an appropriate award against defense counsel. No motion was filed. No countervailing award will reduce Mr. Pautsch's § 1927 liability.

Just as with the fees under the IUTSA, Loparex does not dispute the reasonableness of the requested fee. [*See* dkt. 357.] Neither does Mr. Pautsch. [*See* dkt. 357-2.] Accordingly the Court accepts the reasonableness of the hourly rate and hours worked and will award the fees in full. The MPI Defendants may supplement their fee petition within seven days, if at all, for the time preparing and defending their fee petition. *See Hamer v. County of Lake*, 871 F.2d 58, 60 (7th Cir. 1989) (remanding to calculate fees incurred in connection with § 1927 petition).[9]

### C.     The MPI Defendants' Bill of Costs

Under Federal Rule of Civil Procedure 54(d), the Court has discretion to tax the costs enumerated in 28 U.S.C. § 1920 against the losing party in an action, and a "strong presumption" exists that the Court will do so. *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997) (citation omitted).

Having prevailed against Loparex's Complaint, the MPI Defendants seek costs in the amount of $28,946.67. The costs consist of deposition transcripts and copying costs, including costs for converting electronic documents into a format suitable for production in discovery. Loparex has offered a two-page objection, without citation to any legal authority. [*See* dkt. 350.] The Court's resolution of the objection will be likewise brief in overruling it.

As for its objection to the costs of the depositions, Loparex asserts that the MPI Defendants have not demonstrated that the transcripts were "necessar[y]" for the case, 28 U.S.C. §

---

[9] In light of the statutory basis for a fee award against counsel, the Court need not consider a sanction under its inherent authority.

1920(2).  [*See* dkt. 350 at 1-2.]  But without any cogent argument as to why the depositions were superfluous for motion practice and/or trial, the Court will accept the sworn bill of costs and supporting documentation as sufficient proof of necessity.  *Halasa v. ITT Educ. Servs., Inc.*, 2012 U.S. Dist. LEXIS 24664, *7 (S.D. Ind. Feb. 27, 2012) ("In the absence of any suggestion that a particular deposition transcript purchase was unreasonable, the Court declines to require ITT to do more than complete the declaration required by the form [for the bill of costs] and provide the relevant invoices, which it has done.").

Loparex also objects to the copying costs on the grounds that the MPI Defendants have not shown them necessary, either.  Again, without cogent argument, the Court will overrule the objection.  Insofar as Loparex implies that the copy descriptions are not sufficiently detailed, the detail submitted, which was good enough for the clients who paid the bills, is good enough here, *see Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991) ("Commercial was not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs.  Rather, Commercial was required to provide the best breakdown obtainable from retained records."  (citation omitted)).

Finally, Loparex objects to the costs of electronically harvesting, processing, and producing electronic data.  The Seventh Circuit has approved of this type of cost.  *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (holding that costs for "converting data into a readable format in response to plaintiff's discovery requests" are taxable under § 1920).  To the extent that Loparex objects that the forensic scan that the Court ordered was not a copying cost, the Court disagrees.  The cost was incurred to harvest data into a useful form for production in discovery and is thus taxable.  *See id.*

Loparex's objections to the bill of costs are, therefore, all overruled.

### D. Loparex's Bill of Costs

Having prevailed against Mr. Kerber's and Mr. Odder's counterclaims, Loprarex has filed its own bill of costs, seeking $4,575.91 in costs. [Dkt. 345.] The Court declines to tax costs, for two independent reasons. First where, as here, a litigant has engaged in bad-faith litigation, costs can be denied. *See, e.g.*, *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988) (collecting cases holding that costs can be denied for "misconduct by the prevailing party worthy of a penalty (for example, calling unnecessary witnesses, raising unnecessary issues, or otherwise unnecessarily prolonging the proceedings)"). Second Loparex has not included any supporting documentation with its bill of costs, [*see* dkt. 345], even after Mr. Kerber and Mr. Odders specifically objected to the omission, [*see* dkt. 347 at 1]. At least some documentation of costs is required. *Halasa*, 2012 U.S. Dist. LEXIS 24664, *7 (holding that "relevant invoices" must accompany bill of costs).

Loparex's bill of costs is denied.

### III. CONCLUSION

The MPI Defendants' Motion for Fees, [dkt. 339], is **GRANTED IN PART**. It is granted as to Loparex and to Mr. Pautsch but denied in all other respects. The MPI Defendants' Bill of Costs, [dkt. 338], is also **GRANTED**. The MPI Defendants must submit a revised judgment for the Court's approval within seven days, together with any supplemental fee petition for defending its fees here. Any such supplemental petition must be served on Mr. Pautsch.

Loparex's Bill of Costs, [dkt. 345], is **DENIED**.

07/27/2012

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Donald E. Knebel
BARNES & THORNBURG LLP
donald.knebel@btlaw.com

Jennifer Lynn Schuster
BARNES & THORNBURG LLP
jschuster@btlaw.com

Aaron M. Staser
BARNES & THORNBURG LLP
aaron.staser@btlaw.com

Lynn C. Tyler
BARNES & THORNBURG
lynn.tyler@btlaw.com

Robin Kenton Vinson
NEXSEN PRUET, PLLC
rvinson@nexsenpruet.com

Richard P. Winegardner
BARNES & THORNBURG LLP
rwinegar@btlaw.com