UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LOPAREX, LLC, | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *vs.* | ) | 1:09-cv-01411-JMS-TAB |
| | ) | |
| MPI RELEASE TECHNOLOGIES, LLC, GERALD | ) | |
| KERBER, AND STEPHAN ODDERS , | ) | |
| *Defendants.* | ) | |

## ORDER

Presently pending before the Court in this trade secret case are three motions: (1) Third-Party Defendant Charles W. Pautsch's Fed. R. Civ. P. 59(e) Motion to Alter or Amend Judgment, [dkt. 390]; (2) Plaintiff Loparex, LLC's ("Loparex") Motion to Vacate Order and Judgment and to Reconsider the MPI Defendants' Motion for Attorneys' Fees, [dkt. 392]; and (3) a Motion for *Nunc Pro Tunc* Correction to Judgment of Costs and Fees filed by MPI Release Technologies, LLC ("MPI"), Gerald Kerber, and Stephan Odders (the "MPI Defendants"), [dkt. 395].

## I.
### BACKGROUND

This litigation stems from the departure of two employees, Gerald Kerber and Stephan Odders, from Loparex, and their subsequent employment at MPI. Loparex is a manufacturer of release liner applications, which include the removable backing on adhesive or plastic products. [Dkt. 275 at 3.] Mr. Kerber was an engineering manager for Loparex, with knowledge of the operation and maintenance of Loparex's machinery. [*Id.* at 5.] Mr. Odders worked for Loparex in sales. [*Id.* at 4.] MPI sold similar, but not identical, products to those sold by Loparex, and the parties never directed the Court to any similarities to the formulas MPI and Loparex use to

develop their products.  [*Id.* at 4.]  While this case has a long and protracted history, and while the Court incorporates by reference the Undisputed Material Facts set forth in connection with the MPI Defendants' Motion for Summary Judgment, [dkt. 275 at 2-6], it also sets forth the following relevant facts.

### A.  The Illinois Litigation

Loparex first initiated litigation related to MPI's employment of Mr. Kerber when it sued him in Illinois state court in October 2009, alleging violations of the Illinois Uniform Trade Secret Act ("IUTSA") and breach of a confidentiality/non-competition agreement he had allegedly entered into with Loparex while an employee there.  [Dkt. 136-1.]  Loparex immediately moved for a temporary restraining order and preliminary injunction which would prevent Mr. Kerber from "working for MPI or any other Plaintiff competitor," in any capacity.  [Dkt. 136-2 at 11.] The case was removed to the United States District Court for the Northern District of Illinois and, when United States District Judge Lefkow held a conference on the motion, she declined to schedule a hearing because, she advised the parties, Loparex had not identified the trade secrets it was alleging Mr. Kerber misappropriated.  [Dkt. 136-3 at 17.]  Specifically, she advised Loparex's counsel that "I don't think you have identified protectible trade secrets.  This is a very broad list of claimed – or of secrets, supposedly, that I think largely are under the umbrella of skill that he's developed having worked in this industry for such a long time."  [*Id.*]  Judge Lefkow invited Loparex to narrow its claims, and perhaps identify "some kind of formula that you can prove that [Mr. Kerber] knows about."  [*Id.*]  She also stated "[Y]ou do have the burden of specifying what the trade secrets are, you know.  This is a man who is not – apparently not a person of great means, and I'm not going to allow you to litigate him to death…. [T]he burden is on you to be specific about what you think you can support as a trade secret."  [*Id.* at 19.]

Approximately two weeks after the conference with Judge Lefkow, Loparex voluntarily dismissed the Illinois case.  [Dkt. 16 in *Loparex, LLC v. Kerber*, 1:09-cv-6615.]  The docket in the Illinois case does not indicate that Loparex made any attempt to further identify the trade secrets it was claiming Mr. Kerber misappropriated.

### B.  Loparex Initiates This Litigation

Loparex filed this lawsuit a few days after dismissing the Illinois case, but named MPI and Mr. Odders as defendants in addition to Mr. Kerber.  [Dkt. 1.]  Loparex alleged claims for: (1) violation of Indiana's version of the IUTSA, [*id.* at 9-10, ¶¶ 51-60]; (2) theft/conversion, [*id.* at 11-12, ¶¶ 61-66]; (3) damages under the Indiana Crime Victim Relief Act, [*id.* at 12-13, ¶¶ 67-73]; and (4) tortious interference with business relationship, [*id.* at 14-15, ¶¶ 74-80].  Unlike in the Illinois case, Loparex did not sue Mr. Kerber (or Mr. Odders) for breach of the confidentiality/non-competition agreement.

And thus began an extremely acrimonious proceeding that has lasted three years and has resulted in over 400 docket entries.  Because it is relevant to the pending motions, and the arguments the parties make in connection with those motions, the following summarizes key events that have taken place in the litigation.

- On November 12, 2009, the same day it filed its Complaint, Loparex moved for a temporary restraining order and preliminary injunction.  [Dkt. 9.]  In its supporting brief, Loparex identified as trade secrets known by Mr. Kerber the same trade secrets it had identified in the Illinois case, and which Judge Lefkow had already advised were not adequately defined.  [*Cf.* dkt. 10 at 3-4 and dkt. 6 in *Loparex, LLC v. Kerber*, 1:09-cv-6615 at 3-4.]  As for Mr. Odders and MPI, Loparex refers to paragraph 12 of the Complaint for the trade secrets they allegedly had knowledge of, which include "various confidential and proprietary information and trade secrets belonging to Loparex, including, but not limited to Loparex's expenditures to develop and establish a stable customer base, developing confidential pricing methods, developing marketing plans and strategies, confidential and proprietary client files, client information, software, forms, technical information, internal processes and procedures, business model, pricing, costs, and profit margins." [Dkt. 1 at ¶ 12.]

- On November 17, 2009, Loparex filed a Motion For Expedited Discovery, [dkt. 14], which asked for permission to take depositions beginning in five days, and requested an order requiring the MPI Defendants to respond to written discovery requests within fifteen days. Loparex stated that "expedited discovery is required to validate the scope and effectiveness of the preliminary injunction sought and to permit Loparex to obtain the necessary facts and place them before the Court at the earliest possible date…." [*Id.* at 1.] On that same day, Judge Hamilton ordered the parties to "cooperate in arranging a schedule for expedited discovery regarding plaintiff's motion for preliminary injunction." [Dkt. 19 at 1.]

- On November 30, 2009, Loparex filed an Emergency Motion to Compel Discovery, [dkt. 32], which sought discovery of the contents of the MPI Defendants' hard drives. The Court denied the motion as premature, because Loparex had not yet reviewed all documents produced by the MPI Defendants. [Dkt. 44.] The Court also "stat[ed] its preference that Plaintiff identify specific categories of documents or fewer and more specific search terms, to comply with Judge Hamilton's earlier direction to the parties that the discovery in anticipation of the preliminary injunction hearing be 'focused,'" [*id.* at 2.]

- On January 21, 2010, Loparex moved to file an Amended Complaint to add a claim against Mr. Odders for breach of the confidentiality/non-competition agreement. [Dkt. 66.]

- On January 22, 2010, Judge Barker[1] held a hearing to discuss the upcoming hearing on Loparex's Emergency Motion for Temporary Restraining Order and Preliminary Injunction. [Dkt. 70.] Judge Barker questioned counsel for Loparex extensively regarding whether Loparex had disclosed the specific trade secrets it was claiming Defendants had misappropriated. For example, Judge Barker stated that the trade secrets "hadn't been disclosed previously, and what I understood from reading the papers was that you gave the Defendants a bunch of papers and said it is in there. But I want to know if you have written them out on a piece of paper and said what the trade secrets are in one paragraph, one statement." [Dkt. 86 at 4-5.] Judge Barker also noted that "you brought this lawsuit and have the burden of proof, and you have a particularized burden here with a request for preliminary injunction to show that specific trade secrets were misappropriated. That is your allegation, and if you can't nail it down, the fact that they may have had an opportunity isn't going to carry the day." [*Id.* at 10.] Further, Judge Barker stated, "I am not holding this conference today for you to argue your case. I am just saying don't come to court Monday without having identified those trade secrets." [*Id.* at 11.]

---

[1] The case was transferred to Judge Barker's docket upon Judge Hamilton's elevation to the Seventh Circuit Court of Appeals.

- Later that same day, on January 22, 2010, Loparex filed a Motion to Vacate Hearing on Motion for Preliminary Injunction, [dkt. 68], stating that its request was "[b]ased on information discussed and in light of the Court's comments setting a required burden of proof regarding actual misappropriation which suggests that the current evidence would suggest that conducting the hearing on Plaintiff's motion for preliminary injunction, at this time, would not be an efficient use of the Court's nor the parties [sic] time and resources." [*Id.* at 2.] The Court granted Loparex's Motion to Vacate, and the hearing was cancelled. [Dkt. 72.]

- On February 25, 2010, the MPI Defendants filed a Motion for Leave to File Answer and Counterclaim to Amended Complaint, [dkt. 80], seeking to assert a counterclaim against Loparex for "blacklisting" under Indiana Code § 22-5-3-2. The Court allowed the amendment. [Dkt. 101.]

- On April 2, 2010, the MPI Defendants moved for summary judgment on all of Loparex's claims. [Dkt. 105.]

- On April 22, 2010, Loparex moved to dismiss the MPI Defendants' counterclaims. [Dkt. 124.]

- On May 28, 2010, the MPI Defendants filed a Motion for Discovery Sanctions against Loparex, alleging general discovery misconduct. [Dkt. 143.] The Court granted the motion in part, sanctioning Loparex for forcing the MPI Defendants to obtain documents that Loparex should have produced in response to the MPI Defendants' discovery requests through an order from a Minnesota court presiding over another action involving Loparex. [Dkt. 276 at 10.] The Court also sanctioned Loparex for terminating a deposition, finding that the MPI Defendants were entitled to their fees and expenses incurred in resuming that deposition to complete it. [*Id.*]

- On June 7, 2010, Loparex filed a Motion for a Continuance to Conduct Discovery Under FRCP 56(f), arguing that it needed more time to conduct discovery regarding several issues relevant to the resolution of the MPI Defendants' Motion for Summary Judgment. [Dkt. 149 at 1-2.] The Court granted the Motion to the extent that it gave Loparex until December 1, 2010 to respond to the MPI Defendants' Motion for Summary Judgment. [Dkt. 189.]

- On June 14, 2010, July 14, 2010, and July 22, 2010, [dkts. 157, 176, 182], Loparex filed motions to compel which the Court denied as premature because it found that "counsel have not yet adequately attempted resolution of these discovery issues…." [Dkt. 188 at 3.] The Court also denied the MPI Defendants' request for sanctions made in response to Loparex's Motions to Compel, [dkt. 187]. It noted, however, that "if Plaintiff's counsel continues to make spurious allegations such as those noted above, the Court will revisit the issue of sanctions." [Dkt. 188 at 3.]

- As of December 20, 2010, the MPI Defendants' Motion for Summary Judgment was fully briefed.

- On February 3, 2011, Loparex filed a Motion for Sanctions related to its claim that Mr. Kerber had failed to produce, and later destroyed, certain evidence including log books and a hard drive, and that Mr. Odders had failed to produce a complete copy of his employment agreement with MPI. [Dkt. 225.] The Court denied the motion after a hearing, finding, among other things, that: (1) Mr. Kerber "burned the notebooks for reasons wholly unrelated to this action, and he innocently lost the hard drive," [dkt. 270 at 6]; and (2) neither Mr. Odders nor MPI had Exhibit A to Mr. Odders' employment agreement with MPI in their possession, because Exhibit A was never part of the executed employment agreement, [*id.* at 8].

- On February 17, 2011, the Court denied Loparex's Motion to Dismiss the MPI Defendants' counterclaims. [Dkt. 240.]

- On March 24, 2011, Loparex filed a Motion to Compel, [dkt. 271], which the Court denied because it found that counsel for Loparex had not sufficiently conferred with counsel for the MPI Defendants to attempt to resolve the dispute, [dkt. 288 at 3-4]. The Court noted that it had warned counsel less than forty-four hours before Loparex filed the Motion to Compel that "while [counsel] can and should zealously advocate for their clients, zealous advocacy does not equate with a total-war mentality toward litigation," and that the warning "apparently fell on deaf ears." [*Id.* at 2.]

- On March 25, 2011, the Court granted the MPI Defendants' Motion for Summary Judgment, finding that Illinois law applied, that Loparex had failed to articulate what its claimed trade secrets were, that it had not presented sufficient evidence that Mr. Odders or Mr. Kerber had misappropriated any trade secrets, and that Loparex had not presented any evidence of damages. [Dkt. 275 at 13-15, 17.] Given that the MPI Defendants' counterclaim under Indiana's Anti-Blacklisting statute remained in effect, the Court did not enter final judgment on less than all of the claims.

- In ruling on Loparex's Motion to Dismiss the counterclaim, the Court certified several questions to the Indiana Supreme Court, resulting in the reversal of a decades-old case and providing further clarity regarding the scope of Indiana's Anti-Blacklisting statute. [Dkts. 326; 332.]

- On April 23, 2012, the Court entered its Final Judgment, reflecting that the parties stipulated to the dismissal of Mr. Kerber's and Mr. Odders' counterclaims, and that, pursuant to the Court's grant of the MPI Defendants' Motion for Summary Judgment, Loparex's claims against the MPI Defendants were dismissed with prejudice. [Dkt. 336.]

- On May 7, 2012, the MPI Defendants filed a Motion to Recover Attorneys' Fees for Defense of Trade Secret Claims ("Fee Motion"), seeking fees under the IUTSA, 28 U.S.C. § 1927, and the Court's inherent power.  [Dkt. 339.]  Loparex opposed the Fee Motion, and Mr. Pautsch personally filed an affidavit in opposition. The Court granted the Fee Motion as to fees and costs against Loparex and its counsel, Mr. Pautsch.  [Dkt. 369.]

- On May 8, 2012, Mr. Pautsch moved to withdraw his appearance as Loparex's counsel, [dkt. 346], which the Court granted on May 11, 2012, [dkt. 348].

- On July 30, 2012, Mr. Pautsch filed a Motion for Miscellaneous Relief, [dkt. 370], in which he requested an opportunity to be heard regarding the Court's Order granting the MPI Defendants' Fee Motion.  He filed a similar Supplemental Motion for Miscellaneous Relief on August 7, 2012, [dkt. 374].  The Court denied both motions, finding that Mr. Pautsch had been afforded due process.  [Dkt. 384.]  The Court entered judgment in favor of the MPI Defendants and against Loparex and Mr. Pautsch, jointly and severally, for $475,332.70, and against Mr. Pautsch for fees in the amount of $41,823.50.  [Dkt. 385.]

The Court's grant of the Fee Motion was the catalyst for the three pending motions, which the Court will address in turn.

## II.
### MR. PAUTSCH'S MOTION TO ALTER OR AMEND JUDGMENT

### A.  Standard of Review

Mr. Pautsch's Motion to Alter or Amend Judgment is brought pursuant to Rule 59(e). [*See* dkts. 390 at 1; 392 at 1.]  Affording relief through granting a motion for reconsideration brought pursuant to Rule 59(e) is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).  Rule 59 motions are for the limited purpose of correcting a "manifest error," which "'is not demonstrated by the disappointment of the losing party'; rather, '[i]t is the wholesale disregard, misapplication, or failure to recognize controlling precedent.'"  *United States v. ITT Educ. Servs.*, 2012 U.S. Dist. LEXIS 10512, *23-24 (S.D. Ind. 2012) (citations omitted).  A motion for reconsideration is appropriate only "when the court has misunderstood a party, where the court has made a decision outside the adversarial is-

sues presented to the court by the parties, where the court has made an error of apprehension (not reasoning), where a significant change in the law occurred, or where significant new facts have been discovered." *Nerds On Call, Inc. (Ind.) v. Nerds On Call, Inc. (Cal.)*, 598 F.Supp.2d 910, 916 (S.D. Ind. 2008). Arguments that the court has already considered and rejected "should be directed to the court of appeals." *ITT Educ. Servs.*, 2012 U.S. Dist. LEXIS 10512 at *24.

### B. Discussion

Mr. Pautsch asks the Court to vacate its order holding him responsible for attorneys' fees, arguing that: (1) he was denied procedural due process because he did not "receive actual notice and an opportunity to present his defense," [dkt. 391 at 3]; and (2) consequently, he was unable to present "substantial and controlling authority that conclusively demonstrates Loparex pursued a legitimate case on a good-faith basis that was well-grounded in the law," [*id.* at 10].

The MPI Defendants respond that: (1) Mr. Pautsch was not denied procedural due process because he did receive notice that he might be sanctioned since he received a copy of the Fee Motion and supporting brief, many of the exhibits in support of the motion were communications sent by him, he submitted an affidavit in defense of his conduct, and he raised his due process argument in his Motion for Miscellaneous Relief, [dkt. 370], which the Court considered and denied, [dkt. 396 at 3-5]; (2) Mr. Pautsch's arguments based on Illinois law are waived or have already been rejected by the Court, [*id.* at 5-7]; (3) Mr. Pautsch has waived any argument about the amount of fees sought, [*id.* at 7-8]; and (4) the Court had ample evidence to conclude that the case was a "vendetta" against Mr. Kerber and Mr. Odders, [*id.* at 9].

#### 1. Due Process

Mr. Pautsch argues that due process required that he be given fair notice of the Fee Motion and a separate opportunity to be heard. [Dkt. 391 at 4-5.] He asserts that he should have

been given notice of the specific conduct for which he was potentially subject to sanctions, that a motion seeking attorneys' fees that describes the conduct at issue but does not specifically name the counsel against whom sanctions are sought does not satisfy the due process requirement, and that he was not given a meaningful opportunity to be heard.  [*Id.* at 5-10.]

The Court notes at the outset that, while Mr. Pautsch's Motion to Alter or Amend Judgment relates only to the Court's August 22, 2012 Judgment of Costs and Fees, [dkt. 385], resulting from its July 27, 2012 Order granting the Fee Motion as against Loparex and Mr. Pautsch, [dkt. 369], the Court has also considered Mr. Pautsch's Motion for Miscellaneous Relief, [dkt. 370], and his Reply in Support of Motion for Miscellaneous Relief, [dkt. 383], in deciding Mr. Pautsch's motion here.  Mr. Pautsch makes many of the same arguments here that he made in connection with his Motion for Miscellaneous Relief, and the Court finds the Motion for Miscellaneous Relief closely related to the judgment Mr. Pautsch seeks to alter or amend here. So, the Court will reconsider the arguments Mr. Pautsch made in connection with that motion.  Further, Mr. Pautsch correctly points out that the Court entered its Order denying his Motion for Miscellaneous Relief the day before he filed his reply brief in support of that motion.  [*See* dkts. 383 and 384.]   The Court's Order was the result of a mistaken belief that the deadline for Mr. Pautsch's reply brief had passed, and no reply had been filed.  The premature entry of the Order was unintentional, and any potential harm is remedied here because in ruling on the instant motion the Court has considered and reconsidered all of the briefs submitted in connection with the Motion for Miscellaneous Relief, including Mr. Pautsch's reply brief.

In connection with its denial of Mr. Pautsch's Motion for Miscellaneous Relief – which raises many of the same arguments Mr. Pautsch puts forth here – the Court found that Mr. Pautsch's due process arguments were without merit.  [Dkt. 384.]  Specifically, it found that, alt-

hough Mr. Pautsch claimed to have been unaware that he could submit a brief in his own defense to the Fee Motion, he did not present any authority "that counsel's own misapprehension of available process can create a constitutional infirmity." [*Id.* at 2.]  The Court also found that Mr. Pautsch's argument that he was unaware he should respond because he was not specifically named in the Fee Motion was inconsistent with the fact that he submitted an affidavit in defense of his conduct.  [*Id.*]  Finally, the Court distinguished its imposition of § 1927 sanctions against Mr. Pautsch with imposition of sanctions for violation of the rules of professional conduct. While the latter is subject to detailed procedural rules under the Court's Rules for Disciplinary Enforcement, the former is a statutorily imposed duty which the Court concluded Mr. Pautsch failed to satisfy.  [*Id.* at 2-3.]

The Court is not any more persuaded by Mr. Pautsch's due process arguments now than it was the first time around.  Initially, the Court notes that most of the cases relied upon by Mr. Pautsch for his argument that he did not receive notice or a meaningful opportunity to be heard – both in his Motion to Alter or Amend Judgment and in his earlier Motion for Miscellaneous Relief and Supplemental Motion for Miscellaneous Relief – involved situations where the Court *sua sponte* sanctioned counsel.  *See Johnson v. Cherry*, 422 F.3d 540, 543 (7th Cir. 2005) ("the court on its own motion imposed monetary sanctions on [plaintiff's counsel]," so sanction award was reversed because plaintiff's counsel was entitled to notice and an opportunity to respond); *Larsen v. City of Beloit*, 130 F.3d 1278, 1287 (7th Cir. 1997) (reversing sanction award against plaintiff's counsel in connection with defendant's attorneys' fees incurred in responding to motions for extension of time to respond to summary judgment motion, because the district court *sua sponte* awarded sanctions and "did not give [plaintiff's counsel] notice or an opportunity to respond before imposing the sanctions"); *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 151

(7th Cir. 1996) (where court imposed Rule 11 sanctions in connection with request made in motion to dismiss, and not in a separate motion as required by Rule 11, court acted *sua sponte* and denied plaintiff's counsel of due process right to respond); *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357-58 (3d Cir. 1990) (reversing § 1927 sanction award where fee motion only sought sanctions under Rule 11, and sanctioned counsel only responded to Rule 11 arguments during briefing).[2]  These cases are simply inapposite to the due process analysis here where, as discussed below, Mr. Pautsch *was* on notice and *did* have an opportunity to be meaningfully heard.

### a. Notice

Mr. Pautsch argues that he did not receive notice that he was potentially subject to sanctions under § 1927, asserting that the fact that some of the exhibits to the Fee Motion were letters and email messages from him to opposing counsel was not enough to put him on notice because other attorneys' names appeared on other exhibits, and that any exhibits discussing possible settlement were not properly before the Court under Federal Rule of Evidence 408.  [Dkts. 391 at 5-8; 398 at 2-10.]  The MPI Defendants respond that the Court has already considered and rejected Mr. Pautsch's due process arguments and that, in any event, Mr. Pautsch was on notice that he could face § 1927 sanctions.  [Dkt. 396 at 3-5.]

---

[2] In the remainder of the cases Mr. Pautsch relies upon, the court found that the sanctioned party did not have clear notice that sanctions were being sought against it.  *See FTC v. Alaska Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986) (sanction award against employer reversed where, although motion for sanctions described conduct alleged to be sanctionable, it did not specify against which party sanctions were sought and motion for sanctions focused on acts of employee, not employer); *Nisus Corp. v. Perma-Chink Sys.*, 2007 U.S. Dist. LEIXS 58363, *11-12 (E.D. Tenn. 2007) (§ 1927 sanctions inappropriate where attorneys not notified which of them were potentially subject to sanctions, but also where conduct alleged to be sanctionable and sanctioning authority were not set forth).

The Fee Motion clearly sought fees under § 1927.  [*See* Dkts. 339 at 1 (the MPI Defendants "respectfully move the court, pursuant to…28 U.S.C. § 1927…for an award of attorneys' fees….); 340 at 1 ("the [IUSTA], 28 U.S.C. § 1927, and the Court's inherent power all authorize an award to the MPI Defendants of the attorneys' fees they incurred defending against Loparex's trade secret claims"); *id.* at 15-18 (discussing the fact that § 1927 "authorizes the award of sanctions against counsel," and detailing the acts complained of (e.g., the "settlement offer" which would require MPI to terminate Mr. Odders' and Mr. Kerber's employment, the repeated requests for an order prohibiting Mr. Odders and Mr. Kerber from ever working in the entire release liner industry in any capacity, the repeated accusations of criminal conduct by Mr. Kerber and unethical conduct by defense counsel, and the "aggressive pursuit of voluminous, yet irrelevant, discovery")).]  Any argument that Mr. Pautsch did not know that the MPI Defendants were seeking fees under § 1927, or that he did not know those fees could be awarded against him, does not square with the content of the Fee Motion.

Mr. Pautsch's argument that the MPI Defendants did not specifically single out his conduct or name him in the Fee Motion, and that the exhibits to the Fee Motion which identified him were not enough to put him on notice, is unavailing.  Section 1927 only authorizes the imposition of costs, expenses, and attorneys' fees against *counsel*, not against law firms.  *Claiborne v. Wisdom*, 414 F.3d 715, 722-23 (7th Cir. 2005).  Accordingly, having been put on notice that the MPI Defendants sought fees and costs under § 1927, Mr. Pautsch was also put on notice that those sanctions might be directed at him as one of Loparex's attorneys.  To the extent Mr. Pautsch is arguing that he did not understand § 1927 and its application to counsel, that does not change the fact that he had notice that he could be on the hook for any fees and costs awarded.

- 12 -

Mr. Pautsch asserts that he did not have notice of the possibility that fees and costs could be awarded against him because the exhibits to the Fee Motion identified other Loparex attorneys, and he was not "lead counsel."  The Court has already rejected this argument in connection with Mr. Pautsch's Motion for Miscellaneous Relief, [dkt. 384 at 2], and does so here again.  Mr. Pautsch submitted an affidavit in opposition to the Fee Motion, [dkt. 357-2], which *did* defend his actions in connection with the lawsuit (as discussed more fully below) and goes against any suggestion that he did not know he could be subject to sanctions.  Further, the fact that other attorneys' names appeared on the exhibits does not detract from the fact that Mr. Pautsch could face sanctions too.  And significantly, of the ten letters and email messages the MPI Defendants relied upon in connection with their Fee Motion, seven were authored by Mr. Pautsch.  [*See* dkts. 341-5; 343-1; 343-2; 343-4; 343-6; 343-7; 343-8.]  One of the remaining ten exhibits is an internal Loparex email message not involving counsel, [dkt. 341-3], and the remaining two were authored by Lisa Baiocchi, Mr. Pautsch's colleague, [dkts. 341-7; 343-5].  If the MPI Defendants' reliance on these documents authored by Mr. Pautsch to demonstrate the appropriateness of an award under § 1927 did not put Mr. Pautsch on notice that he could be subject to such an award, it should have.

As to Mr. Pautsch's argument that exhibits regarding a potential settlement are not admissible under Federal Rule of Evidence 408 and were not properly before the Court in connection with the Fee Motion, [dkt. 398 at 7-8], the Court finds that the exhibits were properly before it.  Rule 408 only prohibits evidence of settlement negotiations when it is presented to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408.  Here, the MPI Defendants offered the letters re-

flecting settlement negotiations to support their request for sanctions against Loparex's counsel, not to establish liability.[3]

The Court finds that Mr. Pautsch had notice of the fact that the MPI Defendants were seeking § 1927 fees against him, and declines to alter or amend its judgment due to a lack of notice.

### b.  *Meaningful Opportunity to be Heard*

Mr. Pautsch argues that he did not know he could respond to the Fee Motion or that there was a procedural mechanism for doing so, that the fact that he filed an affidavit in opposition to the Fee Motion did not satisfy his right to be heard, and that it would have been ethically improper to present testimony relating to his advice to his client regarding his client's pursuit of its claims.  [Dkts. 370 at 2-5; 391 at 8-10.]  The MPI Defendants respond that Mr. Pautsch availed himself of the opportunity to be heard by filing his affidavit in opposition to the Fee Motion, and that the Court's Local Rules permitted him to file a response brief.  [Dkt. 396 at 4-5.]

While Mr. Pautsch did not file a separate response only addressing the MPI Defendants' request for § 1927 sanctions against him, nothing in the Federal Rules of Civil Procedure prohibited him from doing so and, indeed, the Court routinely sees counsel file separate responses to § 1927 fee motions.  That Mr. Pautsch claims to have been unaware that he could file a response does not create a due process violation.

---

[3] The Court also rejects Mr. Pautsch's argument, [dkt. 398 at 8], that the MPI Defendants' filing of correspondence between counsel violated Rule 30 of the Seventh Circuit's Standards for Professional Conduct, which states "[u]nless specifically permitted or invited by the court, [counsel] will not send copies of correspondence between counsel to the court."  The MPI Defendants did not "send" copies of the letters and email messages to the Court, but rather attached them as exhibits to a motion which related to their claim of Loparex's counsel's unprofessional conduct. The Court does not believe that the language or intent of Rule 30 prohibits the MPI Defendants' submission of that correspondence in this context.

Additionally, Mr. Pautsch's affidavit filed with Loparex's response to the Fee Motion is much more than simply a defense of Loparex's actions in connection with pursuing the lawsuit, as Mr. Pautsch characterizes it.  [Dkt. 383 at 4.]  Specifically, Mr. Pautsch outlined *his* extensive role in the litigation and defended actions taken in the litigation by stating that:

- He "acted as counsel for [Loparex] throughout this litigation," and is "intimately familiar with the facts and circumstances leading up to and throughout the prosecution of [Loparex's] claims against [the MPI Defendants]," [dkt. 357-2 at 1, ¶ 1];

- He "oversaw, reviewed, and approved the briefings and other materials submitted in support of [Loparex's] case," and "[a]t all times,…held a good-faith, reasonable belief in the legitimacy of [Loparex's] claims and arguments and positions presented thereto," [*id.* at 2, ¶ 3];

- Certain facts "led to [his] good-faith, reasonable belief in [Loparex's] claims, motions, arguments, representations and position presented…," [*id.* at 5, ¶ 13];

- "Through [his] consideration of the above facts, professional experience and consultation with other practicing legal professionals with white-collar criminal prosecution experience and computer forensic experts, [he] formed the good-faith, reasonable, professional opinion that the conduct of the Defendants demonstrated they could be guilty under state and federal criminal laws addressing unfair competition and retention of electronic information and devices.  This good-faith, reasonable, professional opinion led to [his] correspondence with opposing counsel raising allegations of criminal conduct," [*id.* at 5-6, ¶ 15];

- He raised the issue of the MPI Defendants giving their informed consent to be represented by the same counsel because he "believed it was counsels' ethical obligation to obtain such consent and [his] client's ability to negotiate with [the MPI Defendants] was significantly impacted by their decision to proceed individually or collectively due to the potentially varying degrees of liability each faced," and "[i]n [his] extensive practice representing plaintiffs and defendants in claims of trade secret misappropriation or covenant enforcement, [he has] routinely secured such consent or chosen not to represent multiple defendants due to potential or apparent conflicts of interest," [*id.* at 6, ¶ 16];

- "Although at all times [he] held a good-faith, reasonable belief that other charges of ethical and criminal conduct could and may apply, it was always [his] intent to complete civil litigation to a reasonable certainty before initiating potentially unstoppable proceedings.  All allegations [he] raised on behalf of [Loparex] were done so in good-faith based on reasonable conclusions from the evidence despite [his] ultimate decision to not pursue all avenues of recourse.  To the extent Loparex was unable to prove either liability or damages based on the Defendants'

- 15 -

conduct, [he holds] and continue[s] to hold the good-faith, reasonable belief that this is either in sole or large part due to the Defendant's willful destruction of material evidence," [*id.* at 7, ¶ 18]; and

- He "continue[s] to hold a good-faith, reasonable belief in the legitimacy of [Loparex's] claims, motions, arguments, representation and position presented before the [Court]," [*id.* at 8, ¶ 19].

These statements, while perhaps also defending Loparex's conduct, focus more on Mr. Pautsch's conduct. His statements regarding his inquiry into the MPI Defendants' counsel's representation of multiple parties and accusations of criminal conduct by Mr. Odders and Mr. Kerber go directly to arguments made by the MPI Defendants in the section of their brief supporting the Fee Motion relating to § 1927. [*See* Dkt. 340 at 18.] The Affidavit is not "strictly limited to supporting Loparex's defense," [dkt. 391 at 9], as Mr. Pautsch claims.[4]

Mr. Pautsch had notice that the MPI Defendants were seeking to impose fees and costs against him under § 1927, had an opportunity to be heard, and availed himself of that opportunity. In short, he was afforded due process.

### 2. *Mr. Pautsch's Pursuit of the IUTSA Claims*

Mr. Pautsch argues that, had he been able to present his defense, he would have shown that: (1) the Court erred in granting summary judgment in favor of the MPI Defendants because Loparex sufficiently identified its trade secrets under the IUTSA and sufficiently demonstrated that the MPI Defendants misappropriated those trade secrets, [dkt. 391 at 10-15]; (2) the Court

---

[4] Mr. Pautsch also asserts that he would have violated his ethical duties by presenting testimony regarding any efforts to reign in his client. [*Id.* at 9, n.3.] The Indiana Rules of Professional Conduct (which govern attorney conduct in this Court under Local Rule 83-5(e)), however, allow an attorney to reveal client confidences when necessary to defend the attorney against charges of misconduct, making presentation of such testimony appropriate. Ind. R. Prof. Cond. 1.6(b)(5) ("A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary…to establish a defense to a…civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client….").

erroneously referred to the originally-filed Illinois case in issuing § 1927 sanctions, [*id.* at 15-16]; (3) the sanctions are not limited to the "excess" fees incurred, as required by § 1927, [*id.* at 16-17]; (4) the Court "judicially endorsed" Loparex's case through its discovery orders, [*id.* at 17-18]; and (5) the Court erred in concluding that this case constituted a "vendetta" against the MPI Defendants, [*id.* at 18-19].

The MPI Defendants respond that: (1) the arguments regarding the Court's grant of summary judgment are either waived or have already been considered, [dkt. 396 at 5-7]; (2) the Court did not sanction Mr. Pautsch for his conduct in the Illinois case, [*id.* at 7]; (3) Mr. Pautsch has waived any argument about the reasonableness of the fees sought and, in any event, all of the fees were "excess" since the case was frivolous from the start, [*id.* at 7-8]; (4) the argument that the Court approved Mr. Pautsch's conduct has been waived and is irrelevant, [*id.* at 8-9]; and (5) the Court had ample evidence to conclude that the case was a vendetta against the MPI Defendants, [*id.* at 9].

a. *Summary Judgment Arguments*

The Court will only briefly address Mr. Pautsch's arguments – discussed extensively in response to the MPI Defendants' Motion for Summary Judgment and already ruled upon by the Court – that Loparex adequately identified its trade secrets and sufficiently established that those trade secrets were misappropriated.

As to Mr. Pautsch's first argument, that the Court erred in granting summary judgment on the basis that Loparex did not identify its trade secrets, the Court considers that argument only to the extent that it applies to the grant of the Fee Motion. In other words, the Court will not allow Mr. Pautsch to seek reconsideration of the summary judgment decision through his Motion to

Alter or Amend Judgment, but will only consider whether summary judgment was a "close call," which is arguably relevant to the fee award.

Mr. Pautsch argues in his Motion to Alter or Amend Judgment that the Court committed a "manifest error[] of law" and "misappli[ed] Illinois law under the IUTSA" by basing its summary judgment decision on *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002), instead of *Charles Schwab & Co., Inc. v. Carter*, 2005 U.S. Dist. LEXIS 21348 (N.D. Ill. 2005). [Dkt. 391 at 10-11.]  Significantly, however, *Charles Schwab* was never cited or relied upon by Loparex or Mr. Pautsch either in response to the MPI Defendants' Motion for Summary Judgment or the Fee Motion.  If *Charles Schwab* were controlling authority, it seems that Loparex and Mr. Pautsch would have cited it before.

In any event, the Court stands by its reliance on *IDX* to support its finding that Loparex did not adequately identify trade secrets in this case.  In *Charles Schwab*, the Court found that defendant's reliance on vague interrogatory responses to support its claim that plaintiff had not sufficiently identified its trade secrets was misplaced because the interrogatory requests "lump trade secrets in with other proprietary and confidential information," and because defendants could have raised any shortcomings in the interrogatory responses through a motion to compel. 2005 U.S. Dist. LEXIS 21348, *36-37.  Additionally, defendants had previously offered to acquire certain specifically identified models at issue in the litigation – even identifying them by name – which made their argument that plaintiff had not identified the trade secrets at issue "ring[] somewhat hollow."  *Id.* at *37, n. 13.

Conversely, here Loparex was repeatedly warned that it had not sufficiently identified its trade secrets, and needed to do so in order to state a viable IUTSA claim.  As detailed above:

- Judge Lefkow warned Loparex right before Loparex dismissed the Illinois case that "I don't think you have identified protectible trade secrets.  This is a very

broad list of claimed – or of secrets, supposedly, that I think largely are under the umbrella of skill that he's developed having worked in this industry for such a long time." [Dkt. 136-3 at 17.]  Judge Lefkow invited Loparex to narrow its claims, and perhaps identify "some kind of formula that you can prove that [Mr. Kerber] knows about." [*Id.*]  She also stated "[Y]ou do have the burden of specifying what the trade secrets are, you know.  This is a man who is not – apparently not a person of great means, and I'm not going to allow you to litigate him to death…. [T]he burden is on you to be specific about what you think you can support as a trade secret." [*Id.* at 19.]  In its brief supporting its emergency motion for temporary restraining order here, Loparex identified as trade secrets known by Mr. Kerber *the same trade secrets* it had identified in the Illinois case, and which Judge Lefkow had already advised were not adequately defined. [*Cf.* dkt. 10 at 3-4 and dkt. 6 in *Loparex, LLC v. Kerber*, 1:09-cv-6615 at 3-4.]

- Judge Barker warned Loparex, through Mr. Pautsch, during a January 22, 2010 telephone conference that Loparex's responses to interrogatories did not adequately identify the trade secrets at issue, and Mr. Pautsch acknowledged, "[w]e can do better than that…." [Dkt. 86 at 6-7.]

Loparex claims that it identified its trade secrets in its supplemental responses to the MPI Defendants' First Request for Production, Request Number 2, [dkt. 199-9], which consists of twenty pages referring to formulas and machine operating settings.  But Loparex does not explain why that information constitutes trade secrets – *e.g.*, why the information is of value for Loparex and how Loparex kept the information confidential.  *See* 765 Ill. Comp. stat. 1065/2(d).  Similarly, Loparex failed to explain why the documents contained in its supplemental responses to the MPI Defendants' Third Request for Production of Documents, Request Number 1 (supplier quotations and related correspondence), [dkt. 199-10], constitute trade secrets.  And Loparex's reliance on the Affidavit of James Miksta, [dkt. 199-6], also did not satisfy its obligation to identify the trade secrets at issue due, among other things, to its conclusory nature.  Although it has reconsidered Loparex's arguments, the Court declines to change its finding that Loparex failed to adequately identify the trade secrets it was claiming were misappropriated.  The presence of repeated warnings, and the vagueness of the trade secret information identified by Loparex, make the Court's finding that Loparex had not satisfied its burden of identifying trade secrets not a

close call.  *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (Summary judgment is "not a dress rehearsal or practice run; it 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events'").

Mr. Pautsch's second argument – that the Court erred in concluding that Loparex had not demonstrated that the MPI Defendants misappropriated trade secrets – is a non-starter.  This argument is based, at least in part, on Mr. Pautsch's dogged repetition of an allegation that the Court has already explicitly rejected:  that Mr. Kerber destroyed electronic evidence.  As noted above, after a full-blown evidentiary hearing, the Court found that there was nothing nefarious about Mr. Kerber's destruction of log books or his inability to produce a hard-drive he had purchased shortly before he left Loparex.  [Dkt. 270 at 6.]  Because Loparex's claim of misappropriation was based on a premise that this Court has already found was flawed – that Mr. Kerber intentionally destroyed the log books and hard-drive to conceal them – it fails.  *Cf. Liebert Corp. v. Mazur*, 827 N.E.2d 909, 926 (Ill. Ct. App. 2005) (former employee admitted to downloading "price books," which the court had determined were trade secrets).  The Court's finding that Loparex had not demonstrated the MPI Defendants had misappropriated trade secrets was also not a close call.[5]

---

[5] Loparex set forth seven arguments in response to the Fee Motion regarding misappropriation, including inevitable disclosure, destruction as misappropriation, improper means of acquisition, misappropriation of fundamental elements, misappropriation through derivative products, inference of misappropriation, and misappropriation by memorization.  [Dkt. 357 at 15-23.]  The Court declines to sift through these arguments anew one-by-one, again noting that Loparex made no "real attempt to tie the discussion to the facts at hand."  [Dkt. 369 at 7.]  Additionally, and as important, Loparex did not raise those arguments in response to the MPI Defendants' Motion for Summary Judgment.

#### b.   Reference to the Illinois Case

Mr. Pautsch argues that Loparex re-filed the Illinois case in this Court to maintain proper venue, and that "the Court should not rely on that procedure to issue sanctions under § 1927." [Dkt. 391 at 15.]  Without considering what Loparex's real motivation was in voluntarily dismissing the Illinois case and filing this case, the Court notes that Mr. Pautsch mischaracterizes its reliance on that prior proceeding.  In granting the Fee Motion, the Court was justified in considering the fact that Judge Lefkow had warned Loparex about needing to identify the trade secrets at issue, and that it had not yet done so in its Motion For Preliminary Injunction.  Loparex's Motion for Preliminary Injunction here included the same vague allegations as to trade secrets that Judge Lefkow had already warned Loparex were insufficient.  The Court did not sanction Mr. Pautsch for any conduct in the Illinois action, but instead considered his actions there as evidence of his knowledge that Loparex had not adequately identified the trade secrets.  *Kapco Mfg. Co., Inc. v. C&O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) ("If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious").

#### c.   Sanctions Not Limited to "Excess" Fees

Mr. Pautsch argues that the Court's award under § 1927 is not limited to "excess fees." Mr. Pautsch is correct that § 1927 generally does not reach the filing of initial pleadings, however that is not the case when the lawsuit is clearly meritless from the start and the attorney "was or should have been aware of this fact."  *See Overnite Transp. Co. v. Chi. Indus. Tire Co.*, 697 F.2d 789, 794 (7th Cir. 1983).  Given Judge Lefkow's warning that Loparex had not adequately identified the trade secrets it was claiming the MPI Defendants misappropriated, which was information solely within Loparex's control and not dependent on discovery, and Loparex's assertion

of the same vague allegations when it initiated its lawsuit here, the Court declines to alter its decision that § 1927 fees from the beginning of the lawsuit are appropriate.

### d.   "Judicially Endorsed" Discovery

Mr. Pautsch argues that he should not face sanctions for discovery which the Court endorsed, specifically through: (1) the Court's April 22, 2010 Order denying the MPI Defendants' Motion to Stay Discovery, [dkt. 130]; (2) the Court's July 30, 2010 denial of the MPI Defendants' Motion for Sanctions, [dkt. 188]; and (3) the Court's September 8, 2010 grant of Loparex's Motion for a Continuance to Conduct Discovery, [dkt. 189].  [Dkt. 391 at 17.]  Mr. Pautsch also argues that the Court's February 11, 2011 order setting a hearing on Loparex's Motion for Sanctions, [dkt. 239], indicates that "the Court found Loparex's claims colorable."  [Dkt. 391 at 17.] The MPI Defendants respond that Mr. Pautsch has waived that argument by not presenting it in opposition to the Fee Motion and that, in any event, the Court did not sanction Mr. Pautsch for improper discovery, but rather for the entire litigation.  [Dkt. 396 at 8-9.]

Mr. Pautsch did not raise his "judicially endorsed discovery" argument – nor does he argue that he raised it – in response to the Fee Motion.  It is well-settled that "[a] motion to amend or alter a final judgment under Fed. R. Civ. P. 59(e) 'cannot be used to raise arguments which could, and should have been made' before the trial court entered the final judgment."  *Woods v. Michigan City*, 940 F.2d 275, 280 (7th Cir. 1991) (citation omitted).  *See also Anderson v. Flexel, Inc.*, 47 F.3d 243, 247 (7th Cir. 1995) ("We have repeatedly stated that postjudgment motions cannot be used to raise arguments or legal theories that could have been and should have been brought before judgment").

The first time Mr. Pautsch raised the argument that the Court "judicially endorsed" Loparex's case through prior rulings was in his brief in support of his Motion to Alter or Amend

Judgment.  [Dkt. 391 at 17-18.]  He did not raise that argument in response to the Fee Motion or, significantly, in support of his Motion for Miscellaneous Relief (which expressly requested relief on his behalf, not on behalf of his client).  Mr. Pautsch cannot now present new arguments that he failed to present before.  *See Brownstone Publ'g, LLC v. AT&T, Inc.*, 2009 U.S. Dist. LEXIS 25485, *7 (S.D. Ind. 2009) ("Motion practice is not an exercise in trial and error or maybe-maybe not where a party can reserve arguments to present later if earlier ones fail").  Having already concluded that Mr. Pautsch was afforded due process in connection with the Fee Motion, the Court will not now consider the new "judicially endorsed discovery" argument.[6]

### e.  Evidence of "Vendetta"

Mr. Pautsch argues that, "[d]ue to the denial of [his] due process rights, he was not able to demonstrate and conclusively establish that neither he nor Loparex engaged in a 'vendetta' against Mr. Kerber, Mr. Odders, or MPI."  [Dkt. 391 at 18.]  Curiously, though, Mr. Pautsch does not set forth any evidence which would lead to the conclusion that there was not a vendetta, which the Court assumes he would have done if he had such evidence.  *See Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present….Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief") (quotation omitted).  The Court has already concluded that Mr. Pautsch's due process rights were not violated in connection with receiving notice and having an opportunity to respond to the Fee Motion and, in any

---

[6] In any event, the discovery the Court allowed was deemed necessary for Loparex to respond to the MPI Defendants' Motion for Summary Judgment.  The only mechanism available to the Court to find Loparex's claims meritless at that point in the litigation was through ruling on the Motion for Summary Judgment, which was not ripe for decision when the discovery rulings were issued.  And it was not until the Court received Loparex's summary judgment response that it learned Loparex had persisted in failing to identify misappropriated trade secrets.

event, stands by its finding that Loparex had a vendetta against the MPI Defendants and that Mr. Pautsch helped to further it. [*See* dkt. 369 at 9.] Mr. Pautsch cites no authority for his argument, nor does he explain why evidence of Loparex's failure to identify the trade secrets at issue despite numerous warnings that it had not and needed to, and of Loparex's repeated attempts to prevent Mr. Kerber and Mr. Odders from working for MPI in any capacity forever, was not enough to establish that the trade secret claims were brought in bad faith.[7] If Mr. Pautsch really believes he can "demonstrate and conclusively establish" that he did not engage in a vendetta against the MPI Defendants, there was no better time to present that evidence than in response to the Fee Motion, or in support of the Motion for Miscellaneous Relief – yet he did not do so.

Accordingly, for the foregoing reasons, the Court denies Mr. Pautsch's Motion to Alter or Amend Judgment, [dkt. 390].

### III.
### LOPAREX'S MOTION TO VACATE ORDER AND JUDGMENT AND TO RECONSIDER THE MPI DEFENDANTS' MOTION FOR ATTORNEYS' FEES

#### A. Standard of Review

Loparex, like Mr. Pautsch, brings its Motion to Vacate Order and Judgment and to Reconsider the MPI Defendants' Motion for Attorneys' Fees under Rule 59(e). [Dkt. 392 at 1.] Accordingly, the Court applies the same standard it set forth above in connection with Mr. Pautsch's Motion to Alter or Amend Judgment.

---

[7] Mr. Pautsch argues that the Court "fails to explain the foundation" for concluding that his "email missive" to defense counsel supported the existence of a vendetta, especially "where such emails do not result in additional procedure before the Court." [Dkt. 391 at 18.] Mr. Pautsch offers no reason why those emails do not support a vendetta and, further, ignores the fact that the MPI Defendants' counsel presumably billed their clients for responding to those emails. Fees awarded under § 1927 need not be incurred in connection with a "procedure" before the court, but only in connection with the "proceedings" in a case – *i.e.*, all litigation-related activity, including responding to opposing counsel's allegations in emails relating to the case.

### B.  Discussion

In its motion, Loparex argues that: (1) the MPI Defendants did not show a causal connec-

tion between any acts or omissions on the part of Loparex and any specific excess fees, costs or

expenses incurred by them, as allegedly required by 28 U.S.C. § 1927, [*id.* at 3-4]; and (2) the

discovery Loparex undertook was completed with the Court's permission, so cannot be deemed

excessive or vexatious, [*id.* at 5-13].  The MPI Defendants respond that: (1) Loparex's discussion

of § 1927 is misplaced since the statute only applies to the imposition of fees against counsel,

and was not the basis for the Court's award of fees against Loparex, [dkt. 397 at 3-4]; and (2)

either Loparex has waived its argument that discovery sanctioned by the Court cannot be im-

proper, or it was previously raised and rejected by the Court, [*id.* at 4-6].  Loparex replies that a

ruling against it on summary judgment does not necessarily mean that its claims were specious

which, it argues, is necessary for the imposition of sanctions under the IUSTA and Rule 11, as

well as § 1927.  [Dkt. 399 at 4-7.]

#### 1.  *Causal Connection*

The MPI Defendants are correct that Loparex's discussion of § 1927 in connection with

fees and costs imposed against it is irrelevant.  Section 1927 applies only to fees and costs

against counsel, not against parties.  To the extent Loparex is arguing that the Court's imposition

of fees and costs under IUTSA and Rule 11 was inappropriate, the Court notes that Loparex had

a chance to address its claim that the case was not "specious" when it responded to the Fee Mo-

tion.  Instead, it stated that the facts of the case "have been discussed so much that precise cita-

tions are no longer necessary," [dkt. 357 at 3], restated its conclusory allegations – without any

citations to the record – that Mr. Kerber and Mr. Odders had access to and acquired confidential

information and that the timing of certain events was "suspicious," and listed numerous potential

- 25 -

doctrines and legal theories that might provide a basis for its misappropriation claims without any attempt to tie those theories to the fact of this case, [*id.* at 15-23]. In any event, the Court has already found in connection with Mr. Pautsch's Motion to Alter or Amend Judgment that the IUTSA claims were doomed from the start due to Loparex's failure to sufficiently identify the trade secrets it was claiming had been misappropriated – a failure it had been warned about multiple times. Accordingly, the Court stands by its earlier award of fees and costs against Loparex based on the "specious" nature of its claims.

### 2. *"Judicially Endorsed" Discovery*

Loparex raises the "judicially endorsed discovery" argument – the same argument raised by Mr. Pautsch in his Motion to Alter or Amend Judgment – for the first time in its Motion to Vacate Order and Judgment and to Reconsider the MPI Defendants' Motion for Attorneys' Fees. [Dkt. 392 at 5-13.] As discussed above in connection with Mr. Pautsch, the Court will not consider arguments which Loparex did not raise in responding to the Fee Motion. *Wood*, 940 F.2d at 280. Loparex took an all-or-nothing approach in response to the Fee Motion, declining to distinguish between fees sought in connection with discovery that the Court allowed, with other fees. It is now bound by that strategy, and the Court declines to change its decision based on that new argument.[8]

The arguments Loparex makes in its Motion to Vacate Order and Judgment and to Reconsider the MPI Defendants' Motion for Attorneys' Fees have either already been considered

---

[8] In any event, the Court rejects any argument that the MPI Defendants "have had their day in court" as to fees and costs incurred prior to the filing of their May 28, 2010 Motion for Sanctions, [dkts. 143; 276], and that an award of the fees sought in that motion but not granted by the Court are not properly included in the Court's judgment on the Fee Motion. The Motion for Sanctions was brought pursuant to Fed. R. Civ. P. 37 for improper discovery. The Fee Motion was brought under the IUTSA as against Loparex – a wholly different standard that does not focus on particular discovery actions, but rather on Loparex's overall pursuit of the case.

and rejected by the Court, or are improperly raised for the first time now.  The Court denies Loparex's motion.

## IV.
### THE MPI DEFENDANTS' MOTION FOR *NUNC PRO TUNC* CORRECTION TO JUDGMENT OF COSTS AND FEES

In their Motion for *Nunc Pro Tunc* Correction to Judgment of Costs and Fees, [dkt. 395], the MPI Defendants request that the Court amend its prior Judgment of Costs and Fees, [dkt. 385], to reflect that it awarded $28,946.67 in costs to the MPI Defendants and against Loparex, for a total judgment against Loparex of $504,279.37.   Loparex does not dispute that the $28,946.67 should be included in the Judgment against it, arguing only that an amendment to the Judgment should not treated as a *nunc pro tunc* entry because such treatment "may interfere with or cut off post-judgment rights and remedies otherwise provided by the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure," [dkt. 400 at 2].  The MPI Defendants do not object to the entry of an amended judgment without *nunc pro tunc* treatment, [dkt. 401 at 1].

The Court agrees with the parties that it inadvertently omitted the $28,946.67 in costs from Loparex's total liability.   Instead, Loparex's total liability should be $504,279.37.   The Court will enter an amended judgment reflecting the correction without *nunc pro tunc* treatment, but rather pursuant to Federal Rule of Civil Procedure 60(a), which allows the Court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."

## V.
### CONCLUSION

Mr. Pautsch's Fed. R. Civ. P. 59(e) Motion to Alter or Amend Judgment, [dkt. 390], is **DENIED**.  Loparex's Motion to Vacate Order and Judgment and to Reconsider the MPI Defend-

ants' Motion for Attorneys' Fees, [dkt. 392], is also **DENIED**.  The MPI Defendants' Motion for *Nunc Pro Tunc* Correction to Judgment of Costs and Fees, [dkt. 395], is **GRANTED IN PART AND DENIED IN PART**.  It is **GRANTED** to the extent that the Court agrees that $28,946.67 in costs should have been included in the August 22, 2012 Judgment against Loparex, but **DENIED** to the extent that it requests *nunc pro tunc* treatment.  An amended judgment will enter accordingly.

 12/07/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Robin Kenton Vinson
NEXSEN PRUET, PLLC
rvinson@nexsenpruet.com

Aaron M. Staser
BARNES & THORNBURG LLP
aaron.staser@btlaw.com

Annette M. Haas
BARNES & THORNBURG LLP
annette.haas@btlaw.com

Donald E. Knebel
BARNES & THORNBURG LLP
donald.knebel@btlaw.com

Lynn C. Tyler
BARNES & THORNBURG LLP
lynn.tyler@btlaw.com

Richard P. Winegardner
BARNES & THORNBURG LLP
rwinegar@btlaw.com

Charles W. Pautsch
ARNSTEIN & LEHR LLP
cwpautsch@arnstein.com